**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MANY WORLDS 2T INNOVATIONS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SPOTIFY TECHNOLOGY S.A., SPOTIFY AB, and SPOTIFY USA INC.,<br><br>    Defendant | CIVIL ACTION NO. 2:26-cv-00303<br><br><br>**Jury Trial Demanded** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement where Plaintiff Many Worlds 2T Innovations LLC ("Many Worlds") makes the following allegations against Spotify Technology S.A., Spotify AB, and Spotify USA Inc. (collectively "Spotify" or "Defendants").

**BACKGROUND**

1.      Spotify's recommendation engine directly implements the technological solutions claimed in the Many Worlds Asserted Patents. Spotify's system uses dual deep neural networks—one processing user behavioral data, one processing content characteristics—that generate weighted embeddings subsequently combined to produce recommendations. This architecture mirrors the patented fuzzy network approach that analyzes both user behavior and content attributes through weighted relationship structures. The Many Worlds inventors recognized that prior recommendation engines suffered from critical technical deficiencies: they treated recommendation generation as a black box providing no transparency, and they ignored content characteristics by relying solely on collaborative filtering of user behavior patterns. The Many

1

Worlds Asserted Patents solved these problems through specific computer-implemented technical architectures including fuzzy network data structures with weighted affinity relationships, contextual neighborhood algorithms for graph traversal, dual-analysis pipelines combining behavioral and content-based inference, vector-based search using behavioral embeddings, automated natural language generation for explanations, and contrast-identification algorithms enabling serendipitous discovery.

2. Spotify publicly acknowledges that recommendations are central to its business model and competitive differentiation. In regulatory filings, Spotify states: "a key differentiating factor between Spotify and other audio content providers is our ability to provide personalized content that our users will enjoy" and "our ability to offer users content that they have not previously heard and impart a sense of discovery depends on our ability to acquire and appropriately categorize additional content that will appeal to our users' diverse and changing tastes." Spotify's own research publications and technical documentation confirm that its recommendation engine uses the technological approaches claimed in the Many Worlds Asserted Patents, including weighted graph structures (Spotify uses node2vec graph learning algorithms establishing contextual neighborhoods within network-based structures), dual-tower neural network architectures combining user behavioral analysis with content characteristic analysis, vector-based similarity calculations, and automated explanation generation for recommendation transparency.

3. In corporate materials, Spotify describes itself as being "in the discovery business" where "fans from around the world trust our brand to guide them to entertainment that they would never have discovered on their own." Spotify states that if "discovery drives customer satisfaction, and customer satisfaction drives engagement, and engagement drives discovery, we believe

Spotify wins." Spotify emphasizes that its brand reflects and creates culture "by turning vast and intriguing listening data into compelling stories that remind people of the role music, podcasts, and other audio content play in their lives." These business objectives require precisely the technological solutions claimed in the Many Worlds Asserted Patents: contextual discovery systems using fuzzy network neighborhoods, serendipitous recommendation generation through contrast-based affinity analysis, and automated explanation generation that transforms user data and content analysis into natural language communications. Spotify's commercial success in the "discovery business" is built directly on implementing the patented recommendation technologies without authorization.

4.      Many Worlds files this suit to protect its valuable intellectual property rights.

**PARTIES**

10.     Plaintiff Many Worlds 2T Innovations LLC is a Texas limited liability company whose principal place of business is 4802 Parkview Place, Austin, TX 78731.

11.     Defendant Spotify Technology S.A. ("Spotify Technology") is a company duly organized and existing under the laws of the Grand Duchy of Luxembourg, with a place of business located at Regeringsgatan 19, SE-111 53 Stockholm, Sweden.

12.     Spotify Technology, together with its subsidiaries, is an audio streaming and media services provider.  Defendant Spotify AB is a company duly organized and existing under the laws of Sweden, with a place of business located at Regeringsgatan 19, SE-111 53, Stockholm, Sweden. Spotify AB is a wholly owned subsidiary of Spotify Technology.  Spotify AB is the main operating company of Spotify.

13.     Defendant Spotify USA Inc. ("Spotify USA") is a corporation organized and existing under the laws of the State of Delaware.  Spotify USA Inc. registered as a foreign entity in the State

of Texas effective July 7, 2021.  Spotify USA Inc. may be served with process through its registered agent in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

14.     The Defendants and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and in this judicial district in particular.

## JURISDICTION AND VENUE

15.     This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

16.     This Court has personal jurisdiction over all Spotify defendants pursuant to due process and the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042. Spotify USA Inc. registered as a foreign entity in Texas on July 7, 2021 (Texas SOS File No. 804246305), subjecting itself to Texas jurisdiction. Spotify has purposefully directed activities at Texas and established substantial, continuous, and systematic contacts with Texas sufficient for general and specific personal jurisdiction. Spotify: (i) employs workers at home office locations in Texas (including in the Eastern District) using company-provided equipment to perform regular business functions; (ii) operates dedicated server infrastructure physically located in Texas (including the McKinney CDN node in the Eastern District); (iii) generates substantial revenue from Texas users who stream audio content and from advertisers targeting Texas audiences; (iv) solicits Texas residents to become subscribers through advertising and promotional activities directed at Texas; (v) maintains ongoing contractual relationships with Texas residents through subscription agreements governed by terms of service; (vi) processes payments from Texas residents; and (vii) delivers streaming audio services

to Texas residents through server infrastructure including Texas-based CDN nodes. Spotify has committed acts of patent infringement in Texas by making, using, offering for sale, and selling the Accused Instrumentalities to Texas users, operating infringing recommendation systems that process Texas user data, and operating infringing server infrastructure located in Texas. These activities establish minimum contacts with Texas, purposeful availment of Texas benefits and markets, and foreseeability that Spotify would be subject to suit in Texas. Exercise of personal jurisdiction over Spotify comports with traditional notions of fair play and substantial justice. As to foreign defendants Spotify Technology S.A. and Spotify AB, they purposefully direct activities at the United States through their wholly-owned subsidiary Spotify USA Inc., which conducts business in Texas on their behalf, and they are subject to personal jurisdiction under Texas's long-arm statute and due process.

17. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Spotify has committed acts of infringement in this district and maintains a regular and established place of business in this district. Spotify USA Inc., a Delaware corporation, registered to do business in Texas on July 7, 2021 (Texas SOS File No. 804246305), established a jurisdictional presence in this state.

18. Venue is also proper as to foreign defendants Spotify Technology S.A. and Spotify AB under 28 U.S.C. § 1391(c)(3), which provides that foreign corporations may be sued in any district.

## THE MANY WORLDS PATENTS

19. U.S. Patent No. 8,655,829 (the '829 Patent) was filed on October 7, 2011 and issued on February 18, 2014.

20. U.S. Patent No. 8,676,742 (the '742 Patent) was filed on October 7, 2011 and issued on March 18, 2014.

21.     U.S. Patent No. 8,843,433 (the '433 Patent) was filed on July 23, 2012 and issued on September 23, 2014.

22.     U.S. Patent No. 9,454,729 (the '729 Patent) was filed on September 7, 2015 and issued on September 27, 2016.

23.     U.S. Patent No. 10,699,202 (the '202 Patent) was filed on August 27, 2016 and issued on June 30, 2020.

24.     Collectively, the '829 Patent, the '742 Patent, the '433 Patent, the '729 Patent, and the '202 Patent are the "Many Worlds Asserted Patents."

25.     The Many Worlds Asserted Patents claim priority to: (i) U.S. Provisional Application No. 61/469,052, filed March 29, 2011; (ii) U.S. Provisional Application No. 61/496,025, filed June 12, 2011; and (iii) U.S. Provisional Application No. 61/513,920, filed August 1, 2011.

26.     Many Worlds owns all substantial rights to the Many Worlds Asserted Patents, including the right to sue and recover damages for all infringement thereof including past damages.

27.     Many Worlds and any prior owner of the Many Worlds Asserted Patents have neither made nor sold unmarked articles that practice any claim of the Many Worlds Asserted Patents. Many Worlds is therefore entitled to collect pre-filing damages for the full period allowed by law for infringement of the Many Worlds Asserted Patents.

## MANY WORLDS' TECHNOLOGICAL INNOVATIONS

28.     The Many Worlds Asserted Patents claim concrete technological solutions to specific technical problems in computer-implemented recommendation systems. The claimed fuzzy network data structure is not an abstract idea but a specific technical architecture: a weighted graph structure storing multi-dimensional relationships between objects with numerical affinity

indicators, enabling dynamic computation of contextual neighborhoods through graph traversal algorithms. This data structure cannot be implemented mentally or manually at the scale required—it necessarily requires computer processors to store millions of object nodes, maintain weighted edges between them, perform real-time graph traversal computations, and execute nearest-neighbor searches across high-dimensional vector spaces. The claims specify how the fuzzy network maintains weighted relationships, allows multiple simultaneous relationships between objects, and enables contextual scope functions to establish neighborhoods—concrete implementation details that define a specific technological improvement to computer functionality.

29.     The Many Worlds Asserted Patents do not claim abstract ideas or well-known business practices merely implemented on generic computers. The claims recite specific technological architectures and algorithms deeply rooted in computer science: weighted graph data structures with numerical affinity edges, graph traversal algorithms for contextual neighborhood establishment, dual-pipeline processing architectures, vector space embeddings and similarity calculations, natural language generation engines, and multi-dimensional vector comparison with contrast identification. These are concrete technical implementations that constitute patent-eligible subject matter. The claims provide extensive technical detail on how the inventions function: they specify data structure types (fuzzy networks with weighted relationships), algorithmic operations (contextual scope functions, discovery functions, behavioral indexing, affinity generation, vector transformation, contrast identification), input data types (usage behaviors, content text, user demographics), computational transformations (hierarchical-to-network transformation, behavioral-to-affinity transformation, affinity-to-vector encoding), and output generation (recommendations with scoring, natural language explanations). This level of technical specificity distinguishes the claims from abstract concepts. The Federal Circuit has repeatedly held that claims

7

focusing on specific means or methods improving technology, rather than merely reciting desired results, are patent-eligible-precisely what the Many Worlds claims do.

30.    The Many Worlds Asserted Patents improve the functioning of computer systems themselves, not merely using computers as tools to perform abstract processes. The claimed fuzzy network data structure improves how computers store and process relationship information: instead of rigid hierarchical databases or simple binary links, the fuzzy network enables weighted multi-peer relationships with numerical affinity scores that must be computationally maintained and updated. The claimed contextual scope and discovery functions improve how computers traverse graph structures and combine multiple data sources (network topology plus behavioral inferences) to generate outputs. The claimed dual-analysis architecture improves recommendation generation by processing both user-behavior data and content-characteristic data through separate computational pipelines then algorithmically combining results-a specific technical architecture absent from prior systems. The claimed behavioral indexing and vector transformation improve search functionality by representing users and content in vector spaces enabling mathematical similarity operations. Similarity or "distances" between objects and/or users in the multi-dimensional space, and clusters among objects and/or users, may be determined by applying mathematical algorithms to the multi-dimensional space and its elements.  The claimed automated explanation generation improves user interface functionality by coupling analysis engines with natural language generation. These are specific improvements to computer capabilities and performance, not generic computer use for abstract purposes. The claims recite novel technological solutions addressing specific deficiencies in prior computer-implemented recommendation and search systems.

31. At the time of the Many Worlds Asserted Patents' inventions, recommendation engines were largely limited to observing a user's past behavior and then attempting to predict what the user may like in the future based on the user's past choices. Further, a feature that prior recommendation engines lacked was the ability to explain *why* a user received a recommendation. This gap deprived the user of valuable information that may give context to a specific recommendation from a recommendation engine and thus improve the user experience.

32. Prior to the Many Worlds Asserted Patents, recommendation engines predominantly used collaborative filtering: analyzing which users consumed which content, grouping users with similar consumption patterns, and recommending to each user what similar users consumed. This approach had critical technical limitations that degraded recommendation quality. First, pure collaborative filtering is content-agnostic. It treats all content items as opaque identifiers without analyzing what the content actually contains. The system might know that users who liked item #47 also liked item #93, but it has no understanding whether these are short stories or long novels, jazz or rock music, or comedy or drama podcasts. Second, this content-blind approach creates cold-start problems: new content with few user interactions cannot be effectively recommended even if its attributes would appeal to many users. Third, the black-box nature provides no transparency, as users receive recommendations with no explanation of why the system believes they will enjoy the content, reducing trust and engagement. These were not merely business problems but specific technical deficiencies in how computer systems processed and utilized recommendation data.

33. Figure 3 of the '742 Patent presents an example fuzzy network that includes content objects, topic objects, and links between the objects.

9



Figure 3

34.     The '742 Patent discloses that "[t]opic objects 710t are encapsulations that contain meta-information 712t and relationships to other objects (not shown), but do not contain an embedded pointer to reference associated information. The topic object 710t thus essentially operates as a 'label' to a class of information."[1] With respect to content objects, the '742 Patent states:

> Content objects 710c, as shown in FIG. 4C, are encapsulations that optionally contain meta-information 712c and relationships to other objects 710 (not shown). Additionally, content objects 710c may include either an embedded pointer to information or the information714 itself (hereinafter, "information 714").[2]

35.     The fuzzy network's weighted affinity relationships constitute a specific technological tool that improves computer system performance. Unlike conventional binary database relationships that store only whether items are connected, the fuzzy network maintains numerical weights (typically normalized between 0 and 1) indicating relationship strength,

---

[1] '742 patent, 6:64- 7:2.
[2] '742 patent, 7:6-12.

enabling probabilistic recommendations impossible with traditional data structures. These weighted affinities must be computed and updated automatically based on user behavior patterns aggregated across millions of users—a computational task requiring machine processing of behavioral data to generate affinity scores, storage of multidimensional weight matrices, and real-time retrieval during recommendation generation. The human mind cannot mentally compute weighted affinities across millions of content items and users, perform cosine- or correlation-coefficient-similarity calculations on high-dimensional embedding vectors, or maintain real-time updates to relationship weights. The claimed system necessarily requires computer implementation to function, making it patent-eligible technological subject matter under Alice step one, or at minimum containing an inventive concept under Alice step two.

36.    The transformation function specified in the patents performs a concrete technological process: it ingests data from hierarchical originating systems (such as folder hierarchies or tag taxonomies) and transforms them into the fuzzy network's weighted graph structure through specific computational steps. This transformation is not routine data gathering but a technical conversion that requires: (1) analyzing relationships in the originating hierarchical structure; (2) generating new weighted relationship links that capture both explicit hierarchy and implicit co-occurrence patterns; (3) calculating numerical affinity weights through statistical analysis of usage patterns; and (4) constructing multi-parent network nodes that can belong to multiple weighted categories simultaneously. This specific transformation process improves computer functionality by converting rigid hierarchical data into flexible network structures that enable superior recommendation accuracy through graph-based similarity computations.



Figure 5C

37.      The claims of the '742 Patent clearly describe how a system using fuzzy networks

provides the user a better recommendation than prior systems.

1. A computer-implemented method, comprising:

invoking a contextual scope function executed on a processor-based computing device, wherein the contextual scope function establishes a contextual neighborhood within a computer-implemented fuzzy network-based structure;

12

receiving a recommendation, wherein the recommendation is generated by a computer-implemented discovery function that generates the recommendation in accordance with the contextual neighborhood and an inference from a plurality of usage behaviors; and

receiving the recommendation, wherein the recommendation is generated in accordance with the contextual neighborhood, wherein the contextual neighborhood is based on a selected object.

Claim 1 of the '742 Patent recites specific technical operations performed by a processor-based computing device: invoking a contextual scope function that computationally establishes a contextual neighborhood within a fuzzy network by traversing weighted edges from a selected object node to identify related objects within a defined affinity threshold; receiving a recommendation generated by a discovery function that algorithmically combines the contextual neighborhood data with usage behavior inferences through mathematical operations on affinity weights and behavioral probabilities; and basing the contextual neighborhood on a selected object by using that object's node position in the network graph as the traversal starting point. These are specific computer operations improving recommendation accuracy through particular data structure manipulation techniques—not generic computer use to perform abstract concepts.

38.     Dependent claim 5 of the '742 Patent also claims the fuzzy network that is discussed above.

5. The method of claim 1, further comprising:

receiving the recommendation wherein the recommendation is generated in accordance with the contextual neighborhood, wherein the contextual neighborhood corresponds to a portion of the fuzzy network-based structure that is transformed from one or more originating structures.

39.     Claim 5 further requires that the "portion of the fuzzy network-based structure [] is transformed from one or more originating structures." The fuzzy network had an originating structure that was subsequently transformed, for example, by further user behavior.

13

40.     The claims of the '742 Patent require specific technological components and operations that improve computer-implemented recommendation systems. Claim 1 recites three interconnected technical requirements: (1) invoking a contextual scope function executed on a processor-based computing device, wherein the contextual scope function computationally establishes a contextual neighborhood within a fuzzy network-based structure by traversing weighted edges from a starting node to identify related nodes within defined thresholds; (2) receiving a recommendation generated by a computer-implemented discovery function that algorithmically operates on the contextual neighborhood combined with usage behavior inferences, performing mathematical operations on affinity weights and behavioral probability scores to generate ranked recommendations; and (3) basing the contextual neighborhood on a selected object by using that object's position in the network graph as the traversal origin point. Claim 5 adds the requirement that the fuzzy network-based structure was transformed from one or more originating structures—requiring computational conversion of hierarchical or other source data into the weighted network representation. These claims specify concrete computer operations manipulating specific data structures (fuzzy networks with weighted edges) through specific algorithms (contextual scope establishment, graph traversal, discovery functions combining network topology with behavioral data) to achieve technological improvements in recommendation accuracy and relevance.

41.     As another example of the patentability of the Many Worlds Asserted Patents, the claim of the '433 Patent are directed to how the system makes use of the fuzzy network to improve recommendations through inclusion of content-based connections.  For example, claim 8 of the '433 Patent is directed to a recommendation system that makes use of the fuzzy network with weighted relationships between content objects and topics.

8. A computer-implemented system comprising one or more processors configured to:

identify a computer-implemented content object to serve as a contextual reference;

access a first plurality of values, wherein each of the first plurality of values is based on an inference of a first user's interest level with respect to a topic, wherein each of the interest level inferences is derived from a plurality of behaviors;

access a second plurality of values, wherein each of the second plurality of values is based on an inferred degree of relevance to a topic of one or more phrases that are contained in the content object; and

generate a recommendation comprising one or more objects for delivery to the first user, wherein the recommendation is generated in accordance with the first plurality of values and the second plurality of values.

42.     Claim 8 of the '433 Patent requires specific technical components operating in a defined sequence: (1) identifying a content object to serve as contextual reference-a computational pointer operation; (2) accessing user-interest values derived through machine inference algorithms that analyze behavioral data to generate numerical interest scores; (3) accessing content-relevance values computed through natural language processing algorithms that parse phrases within content and calculate relevance scores; and (4) generating recommendations through algorithmic operations that mathematically combine both value sets using weighted scoring functions. This dual-analysis architecture—processing both user preferences and content characteristics through separate computational pipelines then algorithmically combining them—constitutes a specific technical improvement over prior single-dimension recommendation systems. The claim recites the technical means (dual value sets, algorithmic inference, mathematical combination) by which the recommendation improvement is achieved, not merely the result of "better recommendations."

43.     Dependent claims add further patentable aspects.  Prior recommendation engines were essentially "black boxes," delivering results but failing to "show their work."  For example,

15

claim 14 of the '433 Patent adds the following to claim 8 which provides the user transparency into why the recommendation was made:

> 14. The system of claim 8, further comprising a processor configured to:

> generate an explanation for delivery to the first user as to why the recommendation was delivered to the first user, wherein the explanation comprises one or more phrases that associate a theme derived from the second plurality of values with a topic inferred to be of interest to the first user.

44. The automated explanation system of claim 14 solves the prior art's black box problem through specific computer-implemented technical means. The system must: (1) maintain the dual value sets from claim 8 (user interest inferences and content relevance scores); (2) computationally identify which content themes from the second plurality of values (derived from content text analysis) are most relevant to the recommended object; (3) computationally identify which user topics from the first plurality of values (derived from behavioral inference) show highest affinity for the user; (4) algorithmically match high-relevance content themes to high-affinity user topics through scoring or mapping functions; (5) select appropriate natural language phrases that associate the matched themes and topics; and (6) generate and deliver a human-readable explanation communication to the user. This is not a generic "explain the recommendation" instruction but a specific technical architecture for natural language generation driven by coupling content analysis outputs with user profile outputs. Prior to the Many Worlds Patents in 2011, recommendation systems did not generate explanations by computationally matching content-derived themes to behavior-derived user interests—this was an unconventional technical solution. Spotify's own 2018 research paper "Explore, Exploit, and Explain: Personalizing Explainable Recommendations with Bandits" acknowledged that "explaining recommendations [] is crucial if users are to understand their recommendations," confirming both

the technical problem and Spotify's implementation of explanation systems resembling the claimed invention.

45.    Claim 17 of the '433 Patent is directed to a narrower use of the system to execute a search request.

> 17. A computer-implemented system comprising one or more processors configured to:
>
> access a plurality of usage behaviors associated with a first user of a first computer-implemented system that has been behaviorally indexed, wherein the behavioral indexing generates a plurality of topics;
>
> generate a plurality of affinities between the first user of the first computer-implemented system and the plurality of topics, wherein each of the plurality of affinities is indicative of an inferred interest level of the first user for a topic of the plurality of topics, wherein each of the inferred interest levels is derived from one or more behaviors of the plurality of usage behaviors;
>
> transform the plurality of affinities and topics into an object contents vector executable by a search function;
>
> execute a search request from the first user, wherein the search request is executed in accordance with the object contents vector, and wherein the search request is executed against a plurality of objects residing in a second computer-implemented system; and
>
> deliver the results of the search request to the first user.

46.    Claim 17 of the '433 Patent specifies a concrete technical process for behavioral search: (1) accessing usage behaviors and performing behavioral indexing-computational analysis of user actions to extract topic categories through clustering or classification algorithms; (2) generating affinities between users and topics by computing numerical scores based on behavior frequency, recency, and engagement metrics; (3) transforming affinities and topics into object content vectors through specific mathematical encoding operations (such as embedding algorithms) that convert discrete categories and scores into continuous vector representations; (4) executing search requests using these vectors through vector space similarity calculations (such as

cosine similarity or dot products) against a corpus of object vectors; and (5) returning ranked results. This vector-space search architecture using behavioral embeddings was unconventional in 2011 when search engines relied on keyword matching and Boolean logic. The claim recites specific technical transformations (behavioral indexing → affinity generation → vector encoding → vector space search) that improve search functionality through novel data representation and retrieval algorithms.

47.     As another example of the patentability of the Many Worlds Asserted Patents, the '202 Patent addresses the long-standing and pervasive problem of a user not having context for a recommendation. The prior art could leave a user baffled as to why a recommendation was made. The Many Worlds Asserted Patents addressed this deficiency directly. Claim 1 of the '202 Patent reads:

> 1. A computer-implemented method, comprising:
>
> accessing automatically a first plurality of values, wherein each of the first plurality of values is determined by automatically analyzing text that is associated with a content object, wherein each of the plurality of values is based upon an automatically inferred degree of relevancy between an element of the text and the content object;
>
> accessing automatically a second plurality of values, wherein each of the second plurality of values corresponds to one or more topics of a plurality of topics, and wherein a magnitude of each of the second plurality of values is based upon an automatically determined inference from one or more user behaviors; and
>
> generating automatically a communication for delivery to a user of a computer-implemented system, wherein the communication comprises a plurality of words, wherein the plurality of words are selected in accordance with the first plurality of values, the second plurality of values, and one or more syntactical rules.

48.     The '202 Patent's claim 1 specifies technical operations for generating explanations: (1) automatically analyzing text associated with content objects through natural language processing algorithms to extract semantic elements and compute relevancy scores; (2)

automatically accessing user-topic values with magnitudes determined through behavioral inference algorithms; and (3) automatically generating communications by computationally selecting words based on both value sets plus syntactical rules-requiring algorithmic natural language generation that constructs grammatically correct explanatory phrases matching high-relevance content elements to high-affinity user topics. This automated explanation generation solves the prior art's "black box" problem through specific technical means: coupling content analysis outputs with user profile outputs through a natural language generation engine that applies syntactic constraints. The claim does not merely require "explaining" recommendations (a result) but specifies the technical pipeline by which explanations are computationally constructed from analyzed data.

49.     In fact, Spotify's own 2018 paper itself emphasized the need to explain recommendations to users in order to alleviate uncertainty and to drive engagement. In that paper, the Spotify authors said "explaining recommendations [] is crucial if users are to understand their recommendations."[3]

50.     As another example of the patentability of the Many Worlds Asserted Patents, the '729 Patent describes and claims an improved recommendation engine that solves the "filter bubble" problem. Prior systems left users in a "filter bubble," where recommendations were constrained to more of what users had already experienced. Users ended up trapped in more of the same and did not have a way to discover new content. The Many Worlds Asserted Patents solved this problem by incorporating both affinity to topics and also differences among users that have

---

[3] Explore, Exploit, and Explain: Personalizing Explainable Recommendations with Bandits (2018), Abstract, available at https://static1.squarespace.com/static/5ae0d0b48ab7227d232c2bea/t/5ba849e3c83025fa56814f45/1537755637453/BartRecSys.pdf.

some common affinities using contrasting corresponding topic affinity level values. This critical innovation vastly enhanced the capability of recommendation engines to help users discover new content. The '729 Patent offered an unconventional solution to this problem, for example, as shown in claim 1:

> 1. A computer-implemented method, comprising:
>
> selecting automatically a first affinity vector comprising a first plurality of topic affinity level values that are associated with a first user of a computer-implemented system, wherein a plurality of the first plurality of topic affinity level values are each based on an inference from a first one or more usage behaviors;
>
> selecting automatically a second affinity vector comprising a second plurality of topic affinity level values that are associated with a second user of the computer-implemented system, wherein a plurality of the second plurality of topic affinity level values are each based on an inference from a second one or more usage behaviors, and wherein the selection of the second affinity vector is in accordance with a determination of a relatively high level of similarity between a plurality of the first plurality of topic affinity level values and a corresponding plurality of the second plurality of topic affinity level values;
>
> identifying automatically one or more pairs of contrasting corresponding topic affinity level values by comparing topic affinity level values in the first affinity vector with topic affinity level values in the second affinity vector; and
>
> generating automatically a recommendation for delivery to the first user, wherein the recommendation is generated in accordance with the one or more pairs of contrasting corresponding topic affinity level values.

51.    The '729 Patent's claim 1 solves the filter bubble problem through specific technical operations on affinity vector data structures: (1) selecting a first affinity vector-a computational array of numerical topic affinity values for user one; (2) selecting a second affinity vector for user two based on determining high similarity through vector similarity calculations (such as cosine similarity computations across the multi-dimensional affinity space); (3) computationally identifying contrasting pairs by algorithmically comparing corresponding vector

elements to find positions where similarity score exceeds a threshold for most dimensions but falls below threshold for specific dimensions; and (4) generating recommendations weighted toward the contrasting dimensions. This contrast-based recommendation architecture requires specific vector operations: element-wise comparison algorithms, threshold-based filtering, and weighted recommendation scoring that emphasizes contrasting attributes. A human cannot mentally compare multi-dimensional affinity vectors across millions of users to identify optimal similar-yet-contrasting pairs, nor compute the required similarity metrics and contrast identification algorithms—this necessarily requires computer implementation using vector processing capabilities.

52.     This recommendation technique incorporates particular information and/or specific techniques using affinity vector algorithms (specifically contrasting vectors) to improve a recommendation engine, as opposed to the generic concept of "recommendation" in the abstract.

53.     The claimed search for contrasting corresponding topic affinity level values using vector similarity and contrast analysis was not conventional in 2011. Prior art collaborative filtering systems in 2011 used straightforward similarity matching: find users with similar overall profiles and recommend what those similar users consumed. These systems deliberately ignored differences between users within similarity groups, treating all members of a similarity cluster identically. The '729 Patent introduced a mathematically inverse approach: after identifying similar users through vector similarity calculations, deliberately search for dimension-level contrasts and weight recommendations toward those contrasting dimensions. This required new algorithms for element-wise vector comparison, contrast identification, and contrast-weighted scoring-technical improvements to how computer recommendation systems process affinity data. The claimed approach improves computer functionality by enabling serendipitous discovery while

21

maintaining relevance, solving the technical problem of recommendation diversity through specific vector manipulation algorithms.

54. The Many Worlds Asserted Patents are patent-eligible under 35 U.S.C. § 101. Under Alice step one, the claims are not directed to abstract ideas but to specific technological improvements in computer system functionality: weighted graph data structures for relationship storage, contextual neighborhood algorithms for graph traversal, dual-pipeline architectures combining user and content analysis, vector-based search using behavioral embeddings, automated natural language generation for explanations, and contrast-identification algorithms for serendipitous recommendations. These are concrete implementations that necessarily require computers to function. Under Alice step two, even if any limitation were construed as abstract, the claims contain inventive concepts: the fuzzy network architecture was unconventional in 2011; combining content-based and collaborative filtering through dual neural network towers was unconventional; behavioral indexing for vector-based search was unconventional; automated explanation generation coupling content analysis with user profiles was unconventional; and contrast-based recommendation using similar-user vector comparison was unconventional. The claims focus on specific technical means and methods that improve recommendation system technology, not on abstract end results. The patents satisfy § 101 under controlling Fifth Circuit and Federal Circuit precedent recognizing that claims to specific technological implementations improving computer functionality are patent-eligible.

## THE ACCUSED INSTRUMENTALITIES

55. Spotify makes its Two Tower (2T) recommendation engine available through applications, web players, and other interfaces on Apple iOS, Android, MacOS, Windows, connected vehicles, smart TVs, gaming consoles, smart watches, and other platforms. Spotify's 2T

model consists of two feed-forward deep neural networks: a user tower that processes user demographic information and historical interactions with audio content (music, audiobooks, podcasts), generating user embedding vectors; and a content tower that processes content metadata (language, genre, LLM embeddings from titles and descriptions, and HGNN embeddings), generating content embedding vectors. The model outputs user vectors and content vectors that are optimized to be close in vector space for content the user has engaged with, enabling recommendation generation through nearest-neighbor vector similarity search. Spotify operates server infrastructure in the United States that executes this 2T model and delivers recommendations to U.S. users. The Spotify applications, web players, server infrastructure, and 2T recommendation engine are collectively referred to as the "Accused Instrumentalities."

**COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 8,655,829**

56.     Many Worlds repeats and incorporates by reference each preceding paragraph as if fully set forth herein.

57.     On February 18, 2014, the '829 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Activity Stream-Based Recommendations System and Method."

58.     Many Worlds is the owner of the '829 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '829 Patent against infringers, and to collect damages for all relevant times.

59.     Spotify's recommendation engine infringes at least Claim 1 of the '829 Patent. Spotify's service uses a Two Tower neural network model comprising dual deep neural networks that process user behavioral data and content characteristics to generate music recommendations. This system receives activity streams of user listening behavior, selects content objects as

recommendation contexts based on user requests, and generates recommendations through a recommender function that infers user interests from behavioral patterns and applies contextualization through weighted network relationships between content objects-satisfying each limitation of claim 1.

60.     Spotify directly infringes at least Claim 1 of the '829 Patent through its Two Tower recommendation architecture, which implements the claimed activity stream processing, context selection, and recommendation generation based on behavioral inference and network-based contextual relationships.

61.     Spotify has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '829 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

62.     Spotify has committed these acts of infringement without license or authorization.

63.     Spotify has induced and continues to induce infringement of at least claim 1 of the '829 Patent under 35 U.S.C. § 271(b). Spotify has had knowledge of the '829 Patent at least as of the filing of this Complaint. With knowledge of the '829 Patent, Spotify has actively induced end users to directly infringe at least claim 1 of the '829 Patent by: (i) providing the Spotify application and web player to users with instructions on how to use the recommendation features that practice the claimed inventions; (ii) marketing and promoting the personalized recommendation capabilities of the Spotify service to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing recommendation system; (iv) providing help documentation, tutorials, and support materials instructing users on how to discover and use personalized recommendations; and (v) encouraging

24

users through notifications, emails, and in-app prompts to engage with personalized playlists and recommendations generated by the infringing system. Spotify took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its recommendation system.

64.     By engaging in the conduct described herein, Spotify has caused injury to Many Worlds, and Many Worlds has been damaged and continues to be damaged as a result thereof and Spotify is thus liable to Many Worlds for infringement of the '829 Patent, pursuant to 35 U.S.C. § 271.

65.     As a direct and proximate result of Spotify's infringement of the '829 Patent, Many Worlds has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Many Worlds for Spotify's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

66.     In addition, the infringing acts and practices of Spotify have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Many Worlds for which there is no adequate remedy at law, and for which Many Worlds is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Many Worlds is entitled to compensation for any continuing and/or future infringement up until the date that Spotify is finally and permanently enjoined from further infringement.

67.     Spotify has had actual knowledge of the '829 Patent at least as of the date when it was notified of the filing of this action.  By the time of trial, Spotify will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '829 Patent.

68.     Many Worlds has been damaged as a result of the infringing conduct by Spotify alleged above.  Thus, Spotify is liable to Many Worlds in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

69.     Many Worlds is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '829 Patent.

### COUNT 2 – INFRINGEMENT OF U.S. PATENT NO. 8,676,742

70.     Many Worlds repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

71.     On March 18, 2014, the '742 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Contextual Scope-Based Discovery System."

72.     Many Worlds is the owner of the '742 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '742 Patent against infringers, and to collect damages for all relevant times.

73.     Spotify's recommendation engine infringes at least claims 1 and 5 of the '742 Patent. Spotify invokes contextual scope functions that establish contextual neighborhoods within fuzzy network-based graph structures using node2vec algorithms. The system receives recommendations generated by discovery functions operating on these contextual neighborhoods combined with inferences from user usage behaviors. The fuzzy network-based structure is transformed from originating data structures as users interact with content, satisfying the transformation requirement of claim 5.

74.     Spotify directly infringes at least claims 1 and 5 of the '742 Patent through its graph learning recommendation system that establishes fuzzy network contextual neighborhoods and generates content recommendations based on those neighborhoods and user behavioral inferences.

75.     Spotify has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claims 1 and 5 of the '742 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

76.     Spotify has committed these acts of infringement without license or authorization.

77.     Spotify has induced and continues to induce infringement of at least claims 1 and 5 of the '742 Patent under 35 U.S.C. § 271(b). Spotify has had knowledge of the '742 Patent at least as of the filing of this Complaint. With knowledge of the '742 Patent, Spotify has actively induced end users to directly infringe at least claims 1 and 5 of the '742 Patent by: (i) providing the Spotify application and web player to users with instructions on how to use the contextual discovery features that practice the claimed inventions; (ii) marketing and promoting the contextual neighborhood-based recommendation capabilities of the Spotify service to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing contextual scope and discovery functions; (iv) providing help documentation, tutorials, and support materials instructing users on how to discover content through the infringing system; and (v) encouraging users through notifications, emails, and in-app prompts to engage with contextual recommendations generated by the fuzzy network-based system. Spotify took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its contextual discovery system.

78.     By engaging in the conduct described herein, Spotify has caused injury to Many Worlds, and Many Worlds has been damaged and continues to be damaged as a result thereof and Spotify is thus liable to Many Worlds for infringement of the '742 Patent, pursuant to 35 U.S.C. § 271.

79.     As a direct and proximate result of Spotify's infringement of the '742 Patent, Many Worlds has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Many Worlds for Spotify's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

80.     In addition, the infringing acts and practices of Spotify have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Many Worlds for which there is no adequate remedy at law, and for which Many Worlds is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Many Worlds is entitled to compensation for any continuing and/or future infringement up until the date that Spotify is finally and permanently enjoined from further infringement.

81.     Spotify has had actual knowledge of the '742 Patent at least as of the date when it was notified of the filing of this action.  By the time of trial, Spotify will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '742 Patent.

82.     Many Worlds has been damaged as a result of the infringing conduct by Spotify alleged above.  Thus, Spotify is liable to Many Worlds in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

83.    Many Worlds is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '742 Patent.

**COUNT 3 – INFRINGEMENT OF U.S. PATENT NO. 8,843,433**

84.    Many Worlds repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

85.    On September 23, 2014, the '433 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Integrated Search and Adaptive Discovery System and Method."

86.    Many Worlds is the owner of the '433 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '433 Patent against infringers, and to collect damages for all relevant times.

87.    Spotify's recommendation engine infringes at least claims 8, 9, 14, and 17 of the '433 Patent. Spotify identifies content objects as contextual references, accesses values based on user interest inferences derived from behavioral data, and accesses values based on content analysis including text and metadata. The system generates recommendations using both user-interest values and content-relevance values (claims 8-9). For claim 14, Spotify generates explanations to users for why recommendations were delivered, using phrases that associate content themes with inferred user interests. For claim 17, Spotify performs behavioral indexing generating topics, creates user-topic affinities, transforms these into object content vectors, and executes search requests using these vectors.

88.    Spotify directly infringes at least claims 8, 9, 14, and 17 of the '433 Patent through its dual-tower neural network system that combines user behavioral analysis with content-based

analysis to generate and explain recommendations, and through its behavioral indexing and vector-based search system.

89.     Spotify has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claims 8, 9, 14, and 17 of the '433 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

90.     Spotify has induced and continues to induce infringement of at least claims 8, 9, 14, and 17 of the '433 Patent under 35 U.S.C. § 271(b). Spotify has had knowledge of the '433 Patent at least as of the filing of this Complaint. With knowledge of the '433 Patent, Spotify has actively induced end users to directly infringe at least claims 8, 9, 14, and 17 of the '433 Patent by: (i) providing the Spotify application and web player to users with instructions on how to use the integrated search and recommendation features that practice the claimed inventions; (ii) marketing and promoting the dual-analysis recommendation capabilities (combining user behavior and content characteristics) of the Spotify service to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing recommendation explanation features; (iv) providing help documentation, tutorials, and support materials instructing users on how to use search and discovery functions powered by the infringing system; and (v) encouraging users through notifications, emails, and in-app prompts to engage with explained recommendations and behavioral search features. Spotify took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its integrated search and recommendation system.

91.     Spotify has committed these acts of infringement without license or authorization.

92.     By engaging in the conduct described herein, Spotify has caused injury to Many Worlds, and Many Worlds has been damaged and continues to be damaged as a result thereof and Spotify is thus liable to Many Worlds for infringement of the '433 Patent, pursuant to 35 U.S.C. § 271.

93.     As a direct and proximate result of Spotify's infringement of the '433 Patent, Many Worlds has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Many Worlds for Spotify's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

94.     In addition, the infringing acts and practices of Spotify have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Many Worlds for which there is no adequate remedy at law, and for which Many Worlds is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Many Worlds is entitled to compensation for any continuing and/or future infringement up until the date that Spotify is finally and permanently enjoined from further infringement.

95.     Spotify has had actual knowledge of the '433 Patent at least as of the date when it was notified of the filing of this action.  By the time of trial, Spotify will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '433 Patent.

96.     Many Worlds has been damaged as a result of the infringing conduct by Spotify alleged above.  Thus, Spotify is liable to Many Worlds in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

97.    Many Worlds is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '433 Patent.

**COUNT 4 – INFRINGEMENT OF U.S. PATENT NO. 9,454,729**

98.    Many Worlds repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

99.    On September 27, 2016, the '729 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Serendipity Generating Method, System, and Device."

100.    Many Worlds is the owner of the '729 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '729 Patent against infringers, and to collect damages for all relevant times.

101.    Spotify's recommendation engine infringes at least Claim 1 of the '729 Patent. Spotify automatically selects first and second affinity vectors comprising topic affinity level values associated with users, where these values are based on behavioral inferences. The system selects the second vector based on determining high similarity with the first vector. Spotify then identifies pairs of contrasting corresponding topic affinity level values by comparing the vectors and generates recommendations for delivery to the first user based on these contrasting values-enabling discovery of new content that differs from the user's established preferences while maintaining overall similarity.

102.    Spotify directly infringes at least Claim 1 of the '729 Patent through its recommendation system that uses affinity vector analysis to identify similar users with contrasting topic preferences and generates serendipitous recommendations based on those contrasts.

32

103. Spotify has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claim 1 of the '729 Patent, in violation of 35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

104. Spotify has induced and continues to induce infringement of at least claim 1 of the '729 Patent under 35 U.S.C. § 271(b). Spotify has had knowledge of the '729 Patent at least as of the filing of this Complaint. With knowledge of the '729 Patent, Spotify has actively induced end users to directly infringe at least claim 1 of the '729 Patent by: (i) providing the Spotify application and web player to users with instructions on how to use the serendipitous discovery features that practice the claimed inventions; (ii) marketing and promoting Spotify's ability to help users "discover new content" and break out of their listening habits to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing contrast-based recommendation system; (iv) providing help documentation, tutorials, and support materials instructing users on how to discover new music through the infringing affinity vector comparison system; and (v) encouraging users through notifications, emails, and in-app prompts such as "Discover Weekly" and similar features to engage with serendipitous recommendations generated by the infringing system. Spotify took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its serendipity-generating recommendation system.

105. Spotify has committed these acts of infringement without license or authorization.

106. By engaging in the conduct described herein, Spotify has caused injury to Many Worlds, and Many Worlds has been damaged and continues to be damaged as a result thereof and

Spotify is thus liable to Many Worlds for infringement of the '729 Patent, pursuant to 35 U.S.C. § 271.

107. As a direct and proximate result of Spotify's infringement of the '729 Patent, Many Worlds has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Many Worlds for Spotify's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

108. In addition, the infringing acts and practices of Spotify have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Many Worlds for which there is no adequate remedy at law, and for which Many Worlds is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Many Worlds is entitled to compensation for any continuing and/or future infringement up until the date that Spotify is finally and permanently enjoined from further infringement.

109. Spotify has had actual knowledge of the '729 Patent at least as of the date when it was notified of the filing of this action. By the time of trial, Spotify will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '729 Patent.

110. Many Worlds has been damaged as a result of the infringing conduct by Spotify alleged above. Thus, Spotify is liable to Many Worlds in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

111. Many Worlds is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '729 Patent.

## COUNT 5 – INFRINGEMENT OF U.S. PATENT NO. 10,699,202

112. Many Worlds repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

113. On June 30, 2020, the '202 Patent was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Inferential-based Communications Method and System."

114. Many Worlds is the owner of the '202 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '202 Patent against infringers, and to collect damages for all relevant times.

115. Spotify's recommendation engine infringes at least claims 1, 15, and 17 of the '202 Patent. For claim 1, Spotify automatically accesses values determined by analyzing text associated with content objects (including lyrics, metadata, and descriptions), accesses values corresponding to topics with magnitudes based on user behavioral inferences, and generates communications for delivery to users comprising words selected based on both sets of values and syntactical rules. For claims 15 and 17, Spotify accesses content-based values, generates topic relationship values from them, accesses user behavior-based values, and generates explanatory communications to users. Claim 17 further requires neural network processing to determine topics, which Spotify implements through its deep neural network towers.

116. Spotify directly infringes at least claims 1, 15, and 17 of the '202 Patent through its content analysis, user behavior analysis, and AI DJ explanation systems that generate communications combining content-based and behavior-based inferences.

117. Spotify has directly infringed and continues to directly infringe (either literally or under the doctrine of equivalents) at least claims 1, 15, and 17 of the '202 Patent, in violation of

35

35 U.S.C. § 271(a), by making, using, importing, offering for sale, and/or selling the Accused Instrumentalities without authority in the United States and will continue to do so unless enjoined by this Court.

118.    Spotify has induced and continues to induce infringement of at least claims 1, 15, and 17 of the '202 Patent under 35 U.S.C. § 271(b). Spotify has had knowledge of the '202 Patent at least as of the filing of this Complaint. With knowledge of the '202 Patent, Spotify has actively induced end users to directly infringe at least claims 1, 15, and 17 of the '202 Patent by: (i) providing the Spotify application and web player to users with instructions on how to use the AI DJ and recommendation explanation features that practice the claimed inventions; (ii) marketing and promoting the AI DJ's ability to explain why songs are recommended and provide context for recommendations to encourage users to engage with the infringing features; (iii) providing user interfaces specifically designed to facilitate user interaction with the infringing explanation-generation system; (iv) providing help documentation, tutorials, and support materials instructing users on how to use the AI DJ and other explanatory recommendation features; and (v) encouraging users through notifications, emails, and in-app prompts to engage with explained recommendations and AI-generated commentary. Spotify took these actions with specific intent to induce infringement, or at minimum with willful blindness to the infringing nature of its inferential-based communications system.

119.    Spotify has committed these acts of infringement without license or authorization.

120.    By engaging in the conduct described herein, Spotify has caused injury to Many Worlds, and Many Worlds has been damaged and continues to be damaged as a result thereof and Spotify is thus liable to Many Worlds for infringement of the '202 Patent, pursuant to 35 U.S.C. § 271.

121.    As a direct and proximate result of Spotify's infringement of the '202 Patent, Many Worlds has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate Many Worlds for Spotify's past infringement pursuant to 35 U.S.C. § 284, but in no event less than a reasonable royalty, together with interest and costs.

122.    In addition, the infringing acts and practices of Spotify have caused, are causing, and, unless such acts or practices are enjoined by the Court, will continue to cause immediate and irreparable harm and damage to Many Worlds for which there is no adequate remedy at law, and for which Many Worlds is entitled to injunctive relief pursuant to 35 U.S.C. § 283. As such, Many Worlds is entitled to compensation for any continuing and/or future infringement up until the date that Spotify is finally and permanently enjoined from further infringement.

123.    Spotify has had actual knowledge of the '202 Patent at least as of the date when it was notified of the filing of this action.  By the time of trial, Spotify will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '202 Patent.

124.    Many Worlds has been damaged as a result of the infringing conduct by Spotify alleged above.  Thus, Spotify is liable to Many Worlds in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

125.    Many Worlds is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '202 Patent.

## DEMAND FOR JURY TRIAL

126.    Plaintiff hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring that Spotify has directly infringed and induced infringement of, and continues to directly infringe and induce infringement of, U.S. Patent Nos. 8,655,829; 8,676,742; 8,843,433; 9,454,729; and 10,699,202;

B.      Awarding damages to Many Worlds in an amount no less than a reasonable royalty for each Defendant's direct infringement and induced infringement of U.S. Patent Nos. 8,655,829; 8,676,742; 8,843,433; 9,454,729; and 10,699,202, together with prejudgment and post-judgment interest and without limitation under 35 U.S.C § 287;

C.      Awarding injunctive relief pursuant to 35 U.S.C. § 283 enjoining Spotify from practicing claims of any of U.S. Patent Nos. 8,655,829; 8,676,742; 8,843,433; 9,454,729; and 10,699,202;

D.      Awarding Many Worlds its attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

E.      Awarding all other costs and relief that the Court deems just and proper.

Date: April 16, 2026


Respectfully submitted,


By: */s/ Kevin E. Cadwell*

Kevin E. Cadwell, *Lead Attorney*
kcadwell@cadwellthomas.com
Texas Bar No. 24036304
Lisa M. Thomas
lthomas@cadwellthomas.com
Texas Bar No. 24079455
Bradley S. Bowling
bbowling@cadwellthomas.com
Texas Bar No. 24040555
**CADWELL THOMAS LLP**
5373 W. Alabama St., Suite 457
Houston, Texas 77056
Phone: (713) 360-1560
Fax: (940) 233-8587

Mark D. Siegmund
Texas Bar No. 24117055
msiegmund@cjsjlaw.com
"Grace" Shuya Yang
Texas Bar No. 24144144
gyang@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES P.C.**
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509

Jack Shaw (admitted in this District)
California Bar No. 309382
jshaw@cjsjlaw.com
Ryan Loveless
Texas Bar No. 24036997
rloveless@cjsjlaw.com
William D. Ellerman
Texas Bar No. 24007151
wellerman@cjsjlaw.com
**CHERRY JOHNSON SIEGMUND JAMES P.C.**
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Tel: (972) 987-0709
Fax: (866) 627-3509


**ATTORNEYS FOR PLAINTIFF MANY WORLDS 2T INNOVATIONS LLC**