**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MANY WORLDS 2T INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SPOTIFY TECHNOLOGY S.A., SPOTIFY AB, and SPOTIFY USA INC.,<br><br>Defendants | Civil Action No. 2:26-cv-00303-JRG<br><br>Jury Trial Demanded |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS OR TRANSFER PLAINTIFF'S CLAIMS AGAINST SPOTIFY USA INC. AND SPOTIFY AB TO THE SOUTHERN DISTRICT OF NEW YORK**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... iii

TABLE OF ABBREVIATIONS .......... vii

I. INTRODUCTION .......... 1

II. RELEVANT BACKGROUND .......... 2

A. Plaintiff .......... 2

B. Defendants .......... 3

III. STATEMENT OF ISSUES .......... 4

IV. ARGUMENT .......... 5

A. Plaintiff's Claims Against Defendants Should Be Dismissed Because Venue in This Court Is Improper as to Spotify USA .......... 5

1. Spotify USA does not reside in Texas .......... 6

2. Spotify USA does not have a regular and established place of business in the Eastern District of Texas .......... 6

a. Spotify USA does not have a place of business in this District .......... 6

b. Remote employees' homes are not Spotify USA's regular and established place of business .......... 7

c. Third-Party Cloud Service Providers' facilities are not Spotify USA's regular and established place of business .......... 10

B. Plaintiff's Claims Against Spotify USA and Spotify AB Should Be Transferred to the Southern District of New York Pursuant to § 1404(a) .......... 12

1. Plaintiff could have filed suit against Spotify USA and Spotify AB in the Southern District of New York .......... 13

2. The private interest factors favor transfer to New York .......... 14

a. Availability of compulsory process .......... 14

(i) The Echo Nest founders and engineers .......... 15

(ii) Daniel Ellis .......... 16

(iii) Spotify Research Paper co-authors .......... 16

(iv) Former Spotify employees .......... 17

b. Cost of attendance for willing witnesses .......... 18

c. Relative ease of access to sources of proof .......... 20

d. Other practical problems that make trial of the case easy, expeditious, and inexpensive .......... 21

**TABLE OF CONTENTS**
(Continued)

**Page**


3. The public interest factors favor transfer to New York ........................... 22
    a. The local interest ........................................................................ 22
    b. Administrative difficulties flowing from court congestion ......... 23
    c. Other public interest factors ........................................................ 23

C. Plaintiff's Claims Against Spotify Technology Should Be Dismissed or Severed and Stayed ........................................................................................ 24

1. The Court lacks personal jurisdiction over Spotify Technology ............. 24
    a. General jurisdiction ...................................................................... 24
    b. Specific jurisdiction ..................................................................... 25
    c. Rule 4(k)(2) jurisdiction .............................................................. 27
2. Plaintiff fails to state a claim against Spotify Technology ...................... 27
3. Plaintiff's claims against Spotify Technology should be severed and stayed ..................................................................................................... 28

V. CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*4WEB, Inc. v. NuVasive, Inc.*,
No. 2:23-cv-192-JRG, 2024 WL 1932416 (E.D. Tex. May 2, 2024) .......... 7, 8

*Adnexus Inc., LLC v. LinkedIn Corp.*,
No. 6:23-cv-151, 2023 WL 6451124 (W.D. Tex. Oct. 3, 2023) .......... 8

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*,
No. 2:21-cv-172-JRG, 2022 WL 23065578 (E.D. Tex. Dec. 14, 2022) .......... 5, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 27

*Astute Tech., LLC v. Association Archives, Inc.*,
No. 2:15-cv-1511-JRG, D.I. 35 (E.D. Tex. Apr. 20, 2016) .......... 23

*Audiopod IP, LLC v. Amazon.com, Inc.*,
No. 3:24-cv-406, 2025 WL 679044 (E.D. Va. Mar. 3, 2025) .......... 10, 12

*Belfer Cosms., LLC v. Nordstrom, Inc.*,
No. 4:15-cv-683, D.I. 54 (S.D. Tex. Feb. 26, 2016) .......... 21

*Bella Forrest Publ'g LLC v. Murphy*,
No. 4:24-cv-982, 2025 WL 3203669 (E.D. Tex. Nov. 17, 2025) .......... 27

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .......... 27

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) .......... 14

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) .......... 6, 7, 10, 12

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 13, 24, 25

*DISH Network, L.L.C. v. Elahmad*,
No. 23-20180, 2024 WL 1008585 (5th Cir. Mar. 8, 2024) .......... 27

*Elecs. For Imaging, Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003) .......... 26

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*,
No. 2:15-cv-2049-JRG, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) .......... 25

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Cir. 2005) ....................24

*Galderma Labs LP v. Teva Pharms. USA Inc.*,
290 F. Supp. 3d 599 (N.D. Tex. 2017) ....................8

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) ....................20, 23

*In re Google LLC*,
Nos. 2022-140, -141, -142, 2022 WL 1613192 (Fed. Cir. May 23, 2022)....................18

*In re Google*,
949 F.3d 1338 (Fed. Cir. 2020)....................10, 12

*Guvera IP Pty Ltd. v. Spotify USA Inc.*,
No. 21-cv-4544, 2022 WL 4537999 (S.D.N.Y. Sept. 28, 2022) ....................21

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) ....................25, 26

*In re HP, Inc.*,
No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ....................18

*Intercarrier Commc'ns LLC v. WhatsApp Inc.*,
No. 3:12-cv-776, 2013 WL 5230631 (E.D. Va. Sept. 13, 2013) ....................26

*Jawbone Innovations, LLC v. Amazon.com, Inc.*,
No. 2:21-cv-435-JRG, 2022 WL 23025538 (E.D. Tex. Sept. 21, 2022) ....................18, 23

*Lahman v. Nationwide Provider Sols.*,
No. 4:17-cv-305, 2018 WL 3035916 (E.D. Tex. Jun. 19, 2018) ....................24

*Longhorn Automotive Grp. LLC v. Nissan Motor Co.*,
No. 2:24-cv-554-JRG, 2025 WL 2778563 (E.D. Tex. Sept. 26, 2025) ....................28

*Magnacoustics, Inc. v. Resonance Tech. Co.*,
No. 97-1247, 1997 WL 592863 (Fed. Cir. Sept. 25, 1997) ....................5

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ....................18

*Netlist, Inc. v. Samsung Elecs. Co.*,
No. 2:25-cv-557-JRG, 2026 WL 637488 (E.D. Tex. Mar. 6, 2026)....................7

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .......... 20, 22, 23

*Network Sys. Techs., LLC v. Samsung Elecs. Co.*,
No. 2:22-cv-481-JRG, 2023 WL 7649372 (E.D. Tex. Nov. 14, 2023) .......... 28

*NorthStar Systems LLC v. Volkswagen AG*,
No. 2:22-cv-486-JRG, D.I. 66 (E.D. Tex. Aug. 30, 2023) .......... 28

*In re Pandora*,
No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) .......... 18

*Pennington Seed, Inc. v. Produce Exch. No. 299*,
457 F.3d 1334 (Fed. Cir. 2006) .......... 25

*Personal Audio LLC v. Google Inc.*,
280 F. Supp. 3d 922 (E.D. Tex. 2017) .......... 8

*Polar Electro Oy v. Suunto Oy*,
829 F.3d 1343 (Fed. Cir. 2016) .......... 26

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) .......... 24

*Salazar v. HTC Corp.*,
No. 2:16-cv-1096, 2017 WL 3593789 (E.D. Tex. Aug. 20, 2017) .......... 29

*Shifferaw v. Emson USA*,
No. 2:09-cv-54, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) .......... 28, 29

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*,
LLC, 450 F.3d 100 (2d Cir. 2006) .......... 14

*State of New York v. Vayu, Inc.*,
39 N.Y.3d 330 (2023) .......... 14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017) .......... 5, 6

*Telcordia Techs., Inc. v. Alcatel S.A.*,
No. 04-cv-874, 2005 WL 1268061 (D. Del. May 27, 2005) .......... 27

*Tijerino v. Spotify USA Inc.*,
No. 1:25-cv-8176 (S.D.N.Y.) .......... 22

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Tijerino v. Spotify USA Inc.*,
No. 2:24-cv-2290, D.I. 107 (E.D. La. Sept. 8, 2025) .......... 6, 8, 10

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) .......... 21

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .......... 19

*In re Volkswagen Grp. of Am. Inc.*,
28 F.4th 1203 (Fed. Cir. 2022) .......... 5

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .......... 13

*Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*,
No. 2:10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) .......... 23

*W&Wsens Devices Inc. v. Samsung Elecs. Co.*,
No. 2:24-cv-854-JRG, 2025 WL 3281418 (E.D. Tex. Nov. 25, 2025) .......... 18

*Wapp Tech Ltd. Partnership v. Micro Focus Int'l, PLC*,
406 F. Supp. 3d 585 (E.D. Tex. 2019) .......... 25, 26

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
Nos. 2:10-cv-364-JRG, 2:10-cv-365-JRG, 2:10-cv-577-JRG, 2:10-cv-578–JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) .......... 21

**Statutes**

28 U.S.C. § 1400(b) .......... *passim*

28 U.S.C. § 1404(a) .......... *passim*

**Other Authorities**

N.Y.C.P.L.R. § 302(a)(1) .......... 14

Federal Rule 4(k)(2) .......... 27

Federal Rule 12(b)(2) .......... 1

Federal Rule 12(b)(6) .......... 1

# TABLE OF ABBREVIATIONS

| **Abbreviation** | **Description** |
|---|---|
| "McKeever Ex. __"[1] | Exhibits to the Declaration of Steven McKeever, dated July 16, 2026 |
| "Beaufour ¶ __" | Declaration of Allan Beaufour, dated July 15, 2026 |
| "Goring ¶ __"<br>"Goring Ex. __" | Declaration of Lindsey Goring, dated July 15, 2026, and exhibits thereto |
| "Glimberg ¶ __" | Declaration of Marcus Glimberg, dated July 15, 2026 |
| "Lacker ¶ __"<br>"Lacker Ex. __" | Declaration of Ben Lacker, dated July 15, 2026, and exhibits thereto |
| "Spotify Service" | The Spotify streaming service that delivers music, podcasts, audiobooks, and other media content to end-user devices, including mobile phones, tablets, and personal computers |

[1] Some exhibits filed with this Motion contain limited redactions for reasons of privacy and/or confidentiality, including redactions of the precise addresses of and other information concerning witnesses identified in this motion. The general geographic locations of these persons have not been redacted. Defendants will follow-up promptly with unredacted versions filed under seal.

Defendants Spotify USA Inc. ("Spotify USA"), Spotify AB, and Spotify Technology S.A. ("Spotify Technology"; collectively, "Defendants") move to dismiss Plaintiff's claims against them because venue in this Court is improper under 28 U.S.C. § 1400(b). In the alternative, Defendants move to transfer Plaintiff's claims against Spotify USA and Spotify AB to New York pursuant to 28 U.S.C. § 1404(a) because the relevant factors overwhelmingly favor transfer. If Plaintiff's claims are not dismissed based on improper venue, Defendants further move to dismiss Plaintiff's claims against Spotify Technology based on lack of personal jurisdiction under Federal Rule 12(b)(2) or failure to state a claim under Federal Rule 12(b)(6) or, alternatively, to sever and stay those claims.

## I. INTRODUCTION

Plaintiff's patent infringement claims are directed to Spotify USA's operation of the Spotify Service in the United States, particularly the use of personalized recommendation systems to generate recommendations for content. But the claims lack any connection to this District, cannot move forward in this Court, and should be litigated in the Southern District of New York where Spotify USA is headquartered. Adding two foreign affiliates of Spotify USA as defendants does not alter this conclusion.

Plaintiff's claims against Defendants should be dismissed because venue in this District is improper under 28 U.S.C. § 1400(b). Spotify USA is not incorporated in Texas and does not have a regular and established place of business in this District. Plaintiff's attempt to rely on remote employees and alleged "server infrastructure" owned, maintained, and operated by unrelated third-party service providers fails under Federal Circuit precedent. Accordingly, and because venue must be proper as to all Defendants, Plaintiff's claims should be dismissed.

Even if venue were proper, Plaintiff's claims against Spotify USA and Spotify AB should be transferred to the Southern District of New York under 28 U.S.C. § 1404(a) because the

*Volkswagen* factors overwhelmingly favor transfer to that District. Spotify USA, which is headquartered in New York City, develops and operates the Spotify Service (including the personalized recommendation systems at issue) in the United States. Spotify USA's expected technical, marketing, and financial witnesses are all based in its New York City headquarters. And critical non-party witnesses, including prior artists and the authors of a research paper that Plaintiff relies on in its Complaint and infringement contentions, are within the subpoena power of the Southern District of New York. In stark contrast, neither the parties nor the claims have any nexus to this District and Defendants are not aware of any non-party witness within the subpoena power of this Court.

Finally, Plaintiff's naming of Spotify Technology does not change that Plaintiff's claims cannot be litigated in this District. The claims against Spotify Technology, a non-operating holding company based in Luxembourg, should be dismissed based on lack of personal jurisdiction or failure to state a claim, or, alternatively, severed and stayed pending resolution of Plaintiff's claims against Spotify USA and Spotify AB in New York.

## II. RELEVANT BACKGROUND

### A. Plaintiff

Plaintiff was formed earlier this year, acquired the asserted patents one week later, and filed suit against Defendants shortly thereafter. McKeever Exs. 1; 2; D.I. 1. The alleged inventions were developed by Steven Flinn and Naomi Moneypenny at ManyWorlds Inc. McKeever Exs. 3-7. The patents were then acquired by Plaintiff. McKeever Ex. 2. Plaintiff appears to be a non-operating company whose principal place of business is the home of its manager and registered agent, Aaric Eisenstein. D.I. 1 ¶ 10; McKeever Exs. 1; 8 at 2; 9; 10 at 4.

Plaintiff asserts five patents: U.S. Patents Nos. 8,655,829; 8,676,742; 8,843,433; 9,454,729; and 10,699,202. D.I. 1 ¶¶ 19-23; *see* McKeever Exs. 3-7. The asserted patents

allegedly relate to computer-implemented recommendation systems that can be used, *e.g.*, to recommend audio, video, and other content. D.I. 1 ¶¶ 28-54. The earliest possible priority date on the face of the patents is March 29, 2011. *Id.* ¶ 25.

Plaintiff contends that Defendants infringe these patents based on Spotify USA's use of personalized recommendation systems in connection with its operation of the Spotify Service in the United States.[2] *Id.* ¶¶ 1-4, 55 *et seq.* Plaintiff contends that Spotify USA "delivers streaming audio services . . . [and] has committed acts of patent infringement . . . by making, using, offering for sale, and selling the [Spotify Service] . . ., operating infringing recommendation systems . . ., and operating infringing server infrastructure." *Id.* ¶ 16. Plaintiff further identifies certain allegedly infringing features of the personalized recommendation systems, including the use of "node2vec" algorithms. *Id.* ¶¶ 2, 73. Plaintiff does not identify any specific infringing acts by Spotify AB or Spotify Technology. Instead, Plaintiff contends that these foreign entities are liable based on the acts of Spotify USA. *Id.* ¶ 16 ("foreign defendants . . . purposefully direct activities at the United States through their wholly-owned subsidiary Spotify USA" which allegedly "conducts business . . . on their behalf").

**B. Defendants**

Spotify USA, a wholly-owned subsidiary of Spotify AB, is organized under Delaware law and has its principal place of business in New York, New York. Goring ¶¶ 3, 7. Spotify USA operates the Spotify Service, including the personalized recommendation systems, in the United States. *Id.* ¶ 9. The personalized recommendation systems that Spotify uses today are

[2] Plaintiff's allegations are vague but appear to target Spotify software that identifies and makes personalized content recommendations to users, including various alleged aspects of those systems, *e.g.*, the "Two Tower neural network model" (D.I. 1 ¶ 59), "node2vec algorithms" (*id.* ¶ 73), and the use of "affinity vectors" (*id.* ¶ 101). Defendants refer to what they understand to be the accused functionality herein as Spotify's "personalized recommendation systems."

grounded, in part, on music intelligence technology developed by The Echo Nest. Lacker ¶¶ 4, 13. By 2005, The Echo Nest was developing music intelligence technology, including audio analysis and machine listening systems, Echoprint, cultural metadata, recommendation systems, and intelligent playlisting. *Id.* ¶¶ 5-10. The Echo Nest's technology improved upon existing recommendation systems by, among other things, generating recommendation vectors using multiple categories of data, *e.g.*, content-based data derived from machine listening and audio analysis; relationship data among songs, artists, genres, tags, and topics; and cultural metadata. *Id.* ¶ 9. Spotify acquired The Echo Nest in 2014. *Id.* ¶ 14. Spotify USA has since continued to develop personalized recommendation systems. *Id.* ¶ 15.

Spotify AB, a wholly-owned subsidiary of Spotify Technology, is organized under Swedish law and has its principal place of business in Stockholm, Sweden. Glimberg ¶¶ 10-11. Spotify AB is responsible for operating the Spotify Service, including the personalized recommendation systems, outside the United States. *Id.* ¶ 12.

Spotify Technology is a non-operating holding company with just two employees that exists solely as the parent company of Spotify operating companies. *Id.* ¶¶ 4-5. Spotify Technology is organized under Luxembourg law and has a registered office in Luxembourg. *Id.* ¶ 3. Spotify Technology is not responsible for operating the Spotify Service in the United States or anywhere else. *Id.* ¶ 6.

## III. STATEMENT OF ISSUES

1. Whether Plaintiff's claims against Defendants should be dismissed based on improper venue because venue as to Spotify USA is improper under 28 U.S.C. § 1400(b).

2. Whether, in the alternative, Plaintiff's claims against Spotify USA and Spotify AB should be transferred to the Southern District of New York under 28 U.S.C. § 1404(a).

3. Whether Plaintiff's claims against Spotify Technology, if not dismissed based on improper venue, should be dismissed based on lack of personal jurisdiction or failure to state a claim or, alternatively, severed and stayed pending resolution of Plaintiff's claims against Spotify USA and Spotify AB.

## IV. ARGUMENT

Plaintiff's claims should be dismissed because venue against Spotify USA in this Court is improper under 28 U.S.C. § 1400(b). Even if venue were proper, the claims against Spotify USA and Spotify AB should be transferred to New York pursuant to 28 U.S.C. § 1404(a) because the relevant factors overwhelmingly favor transfer. Plaintiff's claims against Spotify Technology, if not dismissed based on improper venue, should be dismissed based on lack of personal jurisdiction or failure to state a claim or, alternatively, severed and stayed pending resolution of the claims against Spotify USA and Spotify AB.

### A. Plaintiff's Claims Against Defendants Should Be Dismissed Because Venue in This Court Is Improper as to Spotify USA

Plaintiff bears the burden of establishing proper venue. *In re Volkswagen Grp. of Am. Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022). Venue is governed by 28 U.S.C. § 1400(b) and Federal Circuit law. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017). A domestic defendant may be sued for infringement only in (1) a district in the state where the defendant resides, or (2) a district in which defendant has a regular and established place of business and has committed acts of infringement. 28 U.S.C. § 1400(b).

Importantly, venue must be proper for each defendant in a multi-defendant case. *See Magnacoustics, Inc. v. Resonance Tech. Co.*, No. 97-1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997). Thus, a court should dismiss claims against foreign entities when venue over a related U.S. entity is improper. *Cf. Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No.

2:21-cv-172-JRG, 2022 WL 23065578, at *2 (E.D. Tex. Dec. 14, 2022) (denying reconsideration of order granting motion to dismiss domestic and foreign defendants where venue was improper for domestic defendant). As shown below, venue in this District is improper for Spotify USA and thus the Court should dismiss the claims against all Defendants.

**1. Spotify USA does not reside in Texas**

A domestic corporation "resides" in the state in which it is incorporated. *TC Heartland*, 581 U.S. at 262. Spotify USA is incorporated in Delaware (Goring ¶ 3) and therefore does not "reside" in Texas. *See Tijerino v. Spotify USA Inc.*, No. 2:24-cv-2290, D.I. 107, at 53 (E.D. La. Sept. 8, 2025) (Spotify USA "only resides in Delaware for purposes of the venue statute"). Accordingly, venue is proper only if Spotify USA has a "regular and established place of business" and commits infringing acts in this District. 28 U.S.C. § 1400(b). As demonstrated below, Spotify USA does not have a regular and established place of business in this District.

**2. Spotify USA does not have a regular and established place of business in the Eastern District of Texas**

For Spotify USA to have a "regular and established place of business" in this District, "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Spotify USA does not have any such place of business in this District.

**a. Spotify USA does not have a place of business in this District**

Spotify USA does not own, lease, or rent any real property, office, or other physical place or premises in the Eastern District of Texas. Goring ¶ 10. Spotify USA also does not own, operate, or control any business, office, warehouse, or store in the Eastern District of Texas. *Id.* ¶ 11. Spotify USA's alleged "regist[ration] to do business in Texas" (D.I. 1 ¶ 17) is irrelevant. *In re Cray*, 871 F.3d at 1362-63 (venue requires a "physical place in the district").

**b. Remote employees' homes are not Spotify USA's regular and established place of business**

Plaintiff's reliance on Spotify USA's remote employees (D.I. 1 ¶ 16) to establish venue fails under controlling Federal Circuit precedent. In *In re Cray*, the Federal Circuit held that homes of employees are not, without more, the regular and established place of business of their employer. 871 F.3d at 1363-65. This Court has since reiterated that "the fact that [defendant] has remote employees that live in the District, on its own, does not alone establish that venue in this District is proper." *4WEB, Inc. v. NuVasive, Inc.*, No. 2:23-cv-192-JRG, 2024 WL 1932416, at *3 (E.D. Tex. May 2, 2024).

Rather, a remote employee's home can be considered the employer's regular and established place of business only if additional facts warrant a finding that their home has been somehow transformed into their employer's place of business. In making that determination, the Court should consider whether defendant (1) owns, leases, or rents any portion of its employees' homes, (2) stores inventory at its employees' homes, (3) conditions an employee's employment on maintaining a residence in the district, (4) intends to maintain a place of business in the district if employees moved out of the district, or (5) identifies its employees' homes as its place of business on a website, or in a telephone or other directory. *Id.* at *2-3. Courts also should consider "the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues." *Id.* at *3 (citing *In re Cray*, 871 F.3d at 1363).

In view of that Federal Circuit precedent and framework, this Court and others in this District and state have repeatedly rejected arguments that remote employees' homes are their employer's regular and established place of business even if their employer provides them with, *e.g.*, laptops, phones, and internet reimbursement. *See, e.g.*, *Netlist*, 2026 WL 637488, at *2

(remote employees' homes not Samsung's place of business despite company-paid laptops, phones, and internet reimbursement); *4WEB,* 2024 WL 1932416, at *3 (remote employees' homes not NuVasive's places of business because, *inter alia*, "NuVasive does not require its employees to live in this District"); *Personal Audio LLC v. Google Inc.*, 280 F. Supp. 3d 922, 935-36 (E.D. Tex. 2017) (remote employees' homes not Google's places of business because Google did not control the homes or store inventory there).[3]

In fact, just last year the District Court for the Eastern District of Louisiana held that the homes of Spotify USA's remote employees in and around New Orleans did not constitute Spotify USA's regular and established place of business. In *Tijerino v. Spotify USA Inc.*, plaintiff argued that Spotify USA had a regular and established place of business in the Eastern District of Louisiana because Spotify USA remote employees worked there pursuant to Spotify's Work from Anywhere Policy. 2:24-cv-2290, D.I. 107, at 6, 8-11. The court rejected that argument, finding that Spotify USA did not "reimburse its Louisiana remote employees for their housing costs," that "Spotify allows its employees to choose where they will work from remotely," and that there was no evidence that Spotify's provision of computers and remote work equipment was "conditioned on the[] employees remaining in the district." *Id.* at 12. The court further explained that the Louisiana remote employees' work "does not have any nexus to the Eastern District of Louisiana . . . and their choosing to live and work from this District does not advance Spotify's commercial interests" there. *Id*. at 9-10 (finding venue improper and

[3] *See also Galderma Labs LP v. Teva Pharms. USA Inc.*, 290 F. Supp. 3d 599, 610 (N.D. Tex. 2017) (remote employees' homes not Teva's place of business because Teva did not condition employment on continued residence in the district); *Adnexus Inc., LLC v. LinkedIn Corp.*, No. 6:23-cv-151, 2023 WL 6451124, at *2–4 (W.D. Tex. Oct. 3, 2023) (remote employees' homes not LinkedIn's places of business despite remote employees residing in the district because LinkedIn neither owned nor leased their homes, reimbursed housing costs, nor required storage of inventory or equipment there).

transferring the case to the Southern District of New York).

The facts here are virtually indistinguishable. Spotify USA employs approximately 3,500 employees, just 10 of whom voluntarily elect to work remotely from their homes in the Eastern District of Texas pursuant to the same Work from Anywhere Policy (collectively, the "Remote Employees"). Goring ¶¶ 8, 12, 19-20; Goring Ex. 1. The Remote Employees' homes are not Spotify USA's regular and established place of business:

- Spotify USA does not own, lease, rent, use, or exercise possession, custody, or control over any portion of the Remote Employees' homes (or reimburse housing costs). Goring ¶¶ 26, 27, 28.
- Spotify USA does not require the Remote Employees to store inventory or any other materials or equipment in their homes. *Id.* ¶ 29.
- Spotify USA did not condition employment offers to the Remote Employees on them living in, or moving to, the Eastern District of Texas and does not condition their continued employment on remaining there. *Id.* ¶¶ 22, 23, 24.
- Spotify USA does not have any intention of hiring other employees in, or requiring other employees to move to, the Eastern District of Texas if any or all the Remote Employees were to leave. *Id.* ¶ 38.
- Spotify USA does not identify the Remote Employees' homes in the Eastern District of Texas as Spotify USA's place of business (or list their home addresses in any public or external directory). *Id.* ¶¶ 33, 34.

*See also id.* ¶¶ 25, 30, 31, 32.

Critically, the Remote Employees' work also does not have any nexus to the Eastern District of Texas and their choosing to live and work from their homes in this District does not advance Spotify USA's commercial interests here. *Id.* ¶¶ 35–37. Rather, the Remote Employees are free to live wherever they like and can move their homes out of the Eastern District of Texas at their own instigation (i) anywhere within the same time zone in the state of Texas without the approval of Spotify USA and (ii) anywhere else in the United States consistent with the Work from Anywhere Policy. *Id.* ¶ 37. In fact, before electing to move to the Eastern District of

Texas, seven of the ten Remote Employees lived outside of Texas. *Id.* ¶ 20.

The homes of the Remote Employees are not Spotify USA's regular and established place of business. *See In re Cray*, 871 F.3d at 1363–65; *Tijerino*, 2:24-cv-2290, D.I. 107, at 12.

**c. Third-Party Cloud Service Providers' facilities are not Spotify USA's regular and established place of business**

Plaintiff's reliance on Spotify USA's alleged "server infrastructure" in this District (D.I. 1 ¶ 16) to establish venue fails under controlling Federal Circuit precedent. In *In re Google LLC*, the Federal Circuit held that the physical location of Google servers at ISPs did not, without more, make those locations Google's regular and established place of business. 949 F.3d 1338, 1344-45 (Fed. Cir. 2020). The Federal Circuit held that "'a regular and established place of business' requires the regular, physical presence of an employee or other agent of defendant ***conducting the defendant's business*** at the alleged 'place of business.'" *Id.* at 1345 (emphasis added). There was no dispute that Google's own employees did not conduct any business at the ISPs. *Id.* at 1341. Moreover, the court held that the installation and maintenance of servers by ISP employees could not be considered ***the conduct of Google's business*** under 28 U.S.C. § 1400(b). *Id.* at 1346. The court emphasized that under § 1400(b), the conduct of business focuses on "the actual producing, storing, and furnishing to customers of what the business offers." *Id*. The Federal Circuit found that "[m]aintaining equipment is meaningfully different from—as only ancillary to—the actual producing, storing, and furnishing to customers of what the business offers." *Id.*

Other courts have since held that the physical location of servers used in connection with a defendant's business, without more, does not constitute the regular and established place of that defendant. For example, in *Audiopod IP, LLC v. Amazon.com, Inc.*, plaintiff argued that AWS server locations in the Eastern District of Virginia used by defendant Audible (an affiliated

company) to deliver audiobooks to customers constituted Audible's regular and established place of business. No. 3:24-cv-406, 2025 WL 679044, at *15 (E.D. Va. Mar. 3, 2025). Relying on *In re Google*, the court rejected that argument and held that "[a]s a matter of law, Audible's use of the AWS datacenters in Ashburn cannot render Ashburn, Virginia a regular and established place of business as to Audible." *Id.* at *16. The court emphasized that AWS employees engaged in installing, hosting, operating, and maintaining servers used by Audible to deliver audiobooks were not conducting Audible's business. *Id.* ("Audible is not in the business of server installation, operation, or maintenance—it is in the business of distributing audiobooks.").

The same result holds here. Spotify USA does not own or operate the servers that are used to deliver the Spotify Service in the United States. Beaufour ¶¶ 3-6. Rather, the Spotify Service is made available to users in the United States using servers that are owned and operated by separate, independent, and unaffiliated third-party service providers (collectively, the "Third-Party Cloud Service Providers"). *Id.* ¶¶ 3-8. Spotify USA does not require that the Third-Party Cloud Service Providers use servers in the Eastern District of Texas. *Id.* ¶¶ 5, 7. Spotify USA does not own, lease, rent, or occupy any portion of any facility owned or operated by those Third-Party Cloud Service Providers in the United States, or have any employees who work at, are stationed at, or regularly visit, those sites. *Id.* ¶¶ 9-10. Spotify USA does not install, control, monitor, repair, reinstall, or maintain any servers owned or operated by the Third-Party Cloud Service Providers, nor does Spotify USA identify any server or server facility of any Third-Party Cloud Service Provider as its own property, office, or place of business. *Id.* ¶¶ 11-12. And Spotify USA certainly does not have any employees, representatives, or agents operating the Spotify Service present at any of those facilities, nor does it store any inventory, products, or other equipment there. *Id.* ¶¶ 13-14. Indeed, Spotify USA does not own, lease, or operate any

servers or server facilities in the Eastern District of Texas, or anywhere else in Texas, and does not own, operate, or maintain any "dedicated server infrastructure" in Texas, including any server or CDN node in McKinney, Texas. *Id.* ¶¶ 16-17. Spotify USA is also not in the business of server installation, operation, monitoring, maintaining, repair, or maintenance. *Id.* ¶ 18.

Accordingly, even if any Third-Party Cloud Service Providers could be considered agents of Spotify USA (they should not), they are not engaged in the conduct of ***Spotify USA's business (operating the Spotify Service)*** when they install, repair, or monitor servers used to provide cloud services to Spotify USA and other customers. *See In re Google*, 949 F.3d at 1346 (maintenance of servers at an ISP is "meaningfully different from . . . the actual producing, storing, and furnishing to customers of what the business offers"); *Audiopod*, 2025 WL 679044, at *15 (AWS employees installing and maintaining servers used by Audible to stream audiobooks are not engaged in Audible's business).

*   *   *

Venue is improper in this District for Spotify USA, and the Court should therefore dismiss Plaintiff's claims against all Defendants. *See* 28 U.S.C. § 1400(b); *In re Cray*, 871 F.3d at 1363-65; *In re Google*, 949 F.3d at 1344-46; *see also Arigna Tech.*, No. 2:21-cv-172-JRG, 2022 WL 23065578, at *3 (denying reconsideration of order granting motion to dismiss domestic and foreign defendants where venue was improper for domestic defendant).

### B. Plaintiff's Claims Against Spotify USA and Spotify AB Should Be Transferred to the Southern District of New York Pursuant to § 1404(a)

Even if Plaintiff could establish that venue in this Court were proper as to Spotify USA (it cannot), Plaintiff's claims against Spotify USA and Spotify AB should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

A court may transfer an action to any district where it might have been brought to serve "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). Movant must show that the suit could have been filed in the transferee forum and that it is "clearly more convenient" based on the balance of private and public interest factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Here, Plaintiff could have filed this lawsuit in the Southern District of New York, and the *Volkswagen* factors strongly favor transfer to that District.

**1. Plaintiff could have filed suit against Spotify USA and Spotify AB in the Southern District of New York**

Plaintiff could have filed its claims against Spotify USA and Spotify AB in the Southern District of New York. Spotify USA is headquartered in New York City. Goring ¶ 7. The District Court for the Southern District of New York can therefore exercise general jurisdiction over it. *See Daimler AG v. Bauman*, 571 U.S. 117, 139, nn.19-20 (2014). Moreover, because Spotify USA's headquarters is a "regular and established place of business" and Spotify USA operates the Spotify Service, including the alleged infringing personalized recommendation systems at issue from its headquarters, venue is proper in the Southern District of New York under 28 U.S.C. § 1400(b).

The Southern District of New York also can exercise specific jurisdiction over Spotify AB with respect to the claims in this case.[4] Spotify AB employees, while not responsible for operating the Spotify Service in the United States, have communicated via electronic and telephonic means with Spotify USA employees based in Spotify USA's New York headquarters in connection with developing aspects of the personalized recommendation systems including the use of "node2vec" algorithms that Plaintiff accuses in its Complaint and infringement contentions. Lacker ¶ 26; D.I. 1 ¶¶ 2, 73; *see also, e.g.*, McKeever Ex. 11, Ex. C at 14, 20, 33, 39, 44-45, 47 (infringement contentions accusing "node2vec" algorithms). The New York court could therefore exercise specific jurisdiction over Spotify AB as to the allegations regarding the same personalized recommendation systems. *See* N.Y.C.P.L.R. § 302(a)(1); *State of New York v. Vayu, Inc.*, 39 N.Y.3d 330, 334 (2023); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt.*, LLC, 450 F.3d 100, 103 (2d Cir. 2006) (claim arises from transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon"). The exercise of jurisdiction also comports with due process. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013).

**2. The private interest factors favor transfer to New York**

**a. Availability of compulsory process**

The Southern District of New York can compel the appearance of critical non-party witnesses including former employees, authors of the research paper Plaintiff relies on for its claims, and third-party prior artists. By contrast, Defendants are not aware of any non-party witnesses in this District. Accordingly, this factor strongly favors transfer to New York.

---

[4] Spotify AB does not waive its argument that the Court lacks personal jurisdiction over it but does not dispute personal jurisdiction solely for purposes of this action because venue over Spotify USA is clearly improper and, if not dismissed, Plaintiff's claims against Spotify USA and Spotify AB can be transferred to the Southern District of New York.

**(i) The Echo Nest founders and engineers**

Spotify USA anticipates calling at trial one or more witnesses from The Echo Nest—a company whose music intelligence technology is both prior art and part of the technology underlying the accused personalized recommendation systems.

By 2005, The Echo Nest began developing music intelligence technology, including audio analysis and machine listening systems, Echoprint, cultural metadata, recommendation systems, and intelligent playlisting. Lacker ¶ 5. The Echo Nest developed its technology primarily in Somerville, Massachusetts, and Defendants are not aware of The Echo Nest having had any facilities or employees in Texas or performing any research or development in Texas. *Id.* ¶ 11. The Echo Nest's music intelligence technology was described in patents and publications before the earliest priority date of the asserted patents. *See, e.g.*, McKeever Exs. 12-14 (patents); 15-17 (publications). In 2014, Spotify acquired The Echo Nest and used it, along with other technology, as a foundation for Spotify's personalized recommendation systems. Lacker ¶¶ 4, 14. The Echo Nest technology developed before 2011 included some of the same core functionalities as Spotify's personalized recommendation systems that are still in use today. *Id.* ¶ 13. Accordingly, The Echo Nest's pre-priority date music intelligence technology is critical in terms of both the alleged validity of the asserted patents and the development of the accused personalized recommendation systems.

To introduce evidence concerning The Echo Nest, Spotify USA expects to call at trial Brian Whitman and/or Tristan Jehan. Brian Whitman was the Co-Founder and Chief Technology Officer of The Echo Nest from 2005 through 2014 and continued at Spotify USA as Principal Scientist responsible for overseeing research and development for the personalized recommendation systems until his departure. Lacker ¶¶ 5, 16–17; McKeever Ex. 18. Tristan Jehan was the Co-Founder and Chief Scientific Officer of The Echo Nest from 2005 through

2014 and continued at Spotify USA as Director of Research responsible for research and development relating to personalized recommendation systems until his departure. Lacker ¶¶ 5, 16, 18; McKeever Ex. 19. Messrs. Whitman and Jehan are also named inventors on patents and/or authors of publications describing The Echo Nest, including prior art patents and publications. *See, e.g.*, McKeever Exs. 12–14 (patents); 15–17 (publications). Messrs. Whitman and Jehan have unique personal knowledge about development and operation of The Echo Nest music intelligence technology and they reside in New York within the subpoena power of the Southern District of New York. Lacker ¶¶ 17-18; McKeever Exs. 20 at 2; 21 (Whitman); 22 at 2; 23 (Jehan).

**(ii) Daniel Ellis**

Spotify USA also anticipates calling at trial Daniel Ellis, a well-known researcher in audio signal processing and a collaborator with The Echo Nest. Lacker ¶ 12. Ellis authored prior art references describing The Echo Nest's music intelligence technology. *See, e.g.*, McKeever Exs. 15–16. Mr. Ellis may have critical and unique personal knowledge regarding the prior art and validity of the asserted patents and development of The Echo Nest technology. Lacker ¶ 12. He resides and works in New York. McKeever Exs. 24; 25 at 2; 26.

**(iii) Spotify Research Paper co-authors**

Spotify USA intends to call at trial one or more authors of the article that Plaintiff relies on to support its claims: *Explore, Exploit, and Explain: Personalizing Explainable Recommendations with Bandits*, Proceedings of the 12th ACM Conference on Recommendation Systems, October 2018 ("Spotify Research Paper"). *See* Lacker Ex. 1. Plaintiff alleges that the Spotify Research Paper "confirm[s]" the alleged "technical problem" at the time of the alleged inventions, *i.e.*, the so-called "black box problem." D.I. 1 ¶ 44. Plaintiff also alleges that the paper "confirm[s] . . . Spotify's implementation of explanation systems resembling the claimed

invention." *Id.* And Plaintiff relies on the Spotify Research Paper throughout its infringement contentions. *See, e.g.*, McKeever Ex. 11, Ex. C at 7, 10, 19, 26, 29, 38. Two of the authors of that article are former Spotify USA employees who reside within the subpoena power of the Southern District of New York: James McInerney and Samantha Hansen. Lacker Ex. 1; McKeever Exs. 27; 28 at 2; 29 (McInerney); 30; 31 at 2; 32 (Hansen). Mr. McInerney and Ms. Hansen have unique personal knowledge regarding prior art, the alleged problems in the field and obviousness of the solutions, and development of Spotify's personalized recommendation systems. Lacker ¶¶ 19-21.

**(iv) Former Spotify employees**

Other former Spotify employees living in New York have unique personal knowledge relating to the claims and defenses in this case. Among these individuals are Erik Bernhardsson and Ian Anderson. Mr. Bernhardsson was an Engineering Manager at Spotify USA from 2008 through 2015. His responsibilities included designing music recommendation systems using large-scale machine learning algorithms in connection with the personalized recommendation systems. Lacker ¶ 22; McKeever Ex. 33. Mr. Anderson was a Spotify USA employee from November 2015 through October 2024. Lacker ¶ 23; McKeever Ex. 34. He was a Research Scientist and Machine Learning Engineer who worked on personalized recommendation systems and was a named inventor on patents assigned to Spotify, multiple of which were directed to methods and systems for personalizing user experiences. McKeever Ex. 34. Mr. Anderson has personal knowledge regarding the research, design, and development of the Spotify personalized recommendation systems. Lacker ¶ 23. Messrs. Bernhardsson and Anderson reside and work within the subpoena power of the Southern District of New York. McKeever Exs. 33; 35 at 2; 36 (Bernhardsson); 34; 37 at 2; 38 (Anderson).

* * *

In sum, critical non-party witnesses are within the subpoena power of the Southern District of New York and there is no indication that any would be willing to voluntarily leave their family, personal, and work obligations in New York to travel to Marshall, Texas for trial. *See In re Pandora*, No. 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. Oct. 13, 2021) ("[W]e have held that when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling." (internal quotations omitted)).[5] Therefore, and because Spotify USA is not aware of any third-party witnesses within the subpoena power of this Court, this factor strongly favors transfer to New York. *See Jawbone Innovations, LLC v. Amazon.com, Inc.*, No. 2:21-cv-435-JRG, 2022 WL 23025538, at *5-6 (E.D. Tex. Sept. 21, 2022) (factor favored transfer where former employees in transferee district were involved in developing the accused audio-signal-processing functionality); *In re Google LLC*, Nos. 2022-140, -141, -142, 2022 WL 1613192, at *4-5 (Fed. Cir. May 23, 2022) (granting mandamus and ordering transfer of case where prior-art witnesses resided in transferee district); *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (factor favored transfer where Netflix identified former employees in transferee forum, including authors of article plaintiff relied on to support infringement allegations in the complaint).

**b. Cost of attendance for willing witnesses**

The cost of attendance for willing witnesses strongly favors transfer to New York. The Fifth Circuit has held that "[w]hen the distance between an existing venue for trial of a matter

[5] *See also In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018) ("[T]he Eastern District of Texas's own cases have held that, when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor."); *W&Wsens Devices Inc. v. Samsung Elecs. Co.*, No. 2:24-cv-854-JRG, 2025 WL 3281418, at *6 (E.D. Tex. Nov. 25, 2025) ("If there is no indication that a witness is willing or unwilling . . . the Court 'must presume utilization of the Court's subpoena power will be required' and consider the witnesses under this factor.").

and a proposed venue is more than 100 miles, this factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004). Applying that standard, New York is far more convenient.

Spotify USA anticipates, based on Plaintiff's current claims, that the employees knowledgeable about Plaintiff's claims and Spotify USA's defenses and who are expected to testify at trial are based in its New York City headquarters. Those expected witnesses may include Ben Lacker, Senior Machine Learning Engineer, and David Nyhan, Director, Personalization Mission. Lacker ¶ 24; McKeever Exs. 39-40. Spotify USA's expected marketing and finance witnesses—including Ben Bullock (Director, North America Business), and Winston Wu (Senior Director, FP&A)—are also based in New York. Goring ¶¶ 39–40; McKeever Exs. 41–42. Defendants are not aware of any Spotify employees in the Eastern District of Texas with any responsibilities for researching, developing, or operating Spotify's personalized recommendation systems. Lacker ¶¶ 25, 27.

The cost and expense of Spotify USA's witnesses traveling to the courthouse in New York are *de minimis*. The courthouse is ***less than one mile*** from Spotify's headquarters, which is about a 15-minute walk or 5-minute taxi ride. McKeever Ex. 43. In stark contrast, Spotify USA's witnesses would have to travel ***roughly 1,300 miles*** to and from this Court, trips that would each take the better part of a day. McKeever Ex. 44.

The difference in cost and convenience for any Spotify AB witnesses as between New York and the Eastern District of Texas is also dramatic.[6] The distance from Stockholm to New York is about 3,900 miles, which would be covered by a direct flight in about 8 ½ hours.

---

[6] Spotify USA does not currently anticipate any Spotify AB witnesses because Spotify USA operates the alleged infringing Spotify Service in the United States. Goring ¶ 9.

McKeever Ex. 45. The distance from Stockholm to Marshall, Texas is about 5,000 miles, which would require a 16-hour connecting flight to arrive in Dallas followed by a 2 ½-hour drive to Marshall, Texas—both ways. McKeever Ex. 46.

Meanwhile, Plaintiff does not appear to have any offices or employees in this District or any employees expected to testify at trial. McKeever Ex. 10 at 3-4. And while one of the named inventors, if willing to testify, lives closer to this Court (Steven Flinn), the other (Naomi Moneypenny) lives in Seattle, Washington, a location that would require roughly equal travel time to this Court and to New York. McKeever Exs. 47-48 (Flinn); 49; 50 at 2; 51-52 (Moneypenny).

In sum, almost all willing witnesses in this case work around the corner from the courthouse in New York or are at least substantially closer to that court, which strongly favors transfer. *See, e.g.*, *In re Google LLC*, 58 F.4th 1379, 1383-84 (Fed. Cir. 2023) (factor favored transfer when defendant's product and engineering teams, marketing and finance personnel, and authors of article relied on by plaintiff were based in transferee district); *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *6 (E.D. Tex. Jan. 23, 2012) (factor favored transfer when "[t]he number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant knowledge residing in Northern California").

**c. Relative ease of access to sources of proof**

The relative ease of access to sources of proof favors transfer to New York. As discussed above, sources of proof in this case will include numerous third-party and party witnesses based in New York. In addition, Spotify USA's relevant documents are easily accessible in New York. Given that almost half of Spotify USA's employees are based in New York (Goring ¶ 8) and employees are typically granted access only to documents necessary for them to perform their

duties (Lacker ¶¶ 28-29), transfer to New York ensures that relevant documents are easily accessible. *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364-JRG, 2:10-cv-365-JRG, 2:10-cv-577-JRG, 2:10-cv-578–JRG, 2012 WL 506669, at *3–4 (E.D. Tex. Feb. 15, 2012) (factor favored transfer when the defendant's documents were located at its corporate headquarters where research and development took place); *In re TikTok, Inc.*, 85 F.4th 352, 358-60 (5th Cir. 2023) (factor favored transfer when key evidence in the form of the defendant's source code was more easily accessible from the transferee district).

#### d. Other practical problems that make trial of the case easy, expeditious, and inexpensive

This factor weighs in favor of transfer to New York because Plaintiff has no witnesses or operations in this District, Spotify USA is headquartered in New York, and Spotify AB is headquartered in Stockholm. *See Belfer Cosms., LLC v. Nordstrom, Inc.*, No. 4:15-cv-683, D.I. 54, at *9 (S.D. Tex. Feb. 26, 2016) (finding this factor weighed in favor of transfer because "[t]rying the case closer to where the parties are located is generally easier, more expeditious, and less expensive"). In addition, several patent infringement cases against Spotify, including relating to personalized recommendation systems, have been litigated in the Southern District of New York. For example, in *Guvera IP Pty Ltd. v. Spotify USA Inc.*, Guvera accused the same Spotify "Streaming Service" of infringing its patents relating to generating personalized content recommendations. No. 21-cv-4544, 2022 WL 4537999, at *1-2, 8 (S.D.N.Y. Sept. 28, 2022). Other patent litigation against Spotify USA relating to the Spotify Service is also pending in that court. *See Tijerino v. Spotify USA Inc.*, No. 1:25-cv-8176 (S.D.N.Y.) (transferred from the Eastern District of Louisiana after finding venue improper in that District).

### 3. The public interest factors favor transfer to New York

#### a. The local interest

There is a strong local interest in having this dispute decided in New York. Spotify USA is headquartered in New York, researches and develops the personalized recommendation systems from its New York headquarters, and operates the Spotify Service in the United States from its New York headquarters. Goring ¶¶ 7-9; Lacker ¶ 15. Roughly half of Spotify USA's employees are also based in New York, including key engineers, marketing, and financial employees likely to testify in this case. *See* Goring ¶¶ 8, 39–40; Lacker ¶ 24. In particular, the division within Spotify focused on research, development, and design of the personalized experience, including the personalized recommendation systems, has approximately 385 employees, about 175 of whom are based in New York. Goring ¶ 41.

In stark contrast, this District has no particular interest in this dispute. Plaintiff is a non-operating company, appears to lack any employees, and does not have any offices in this District. McKeever Exs. 10 at 3-4. Spotify USA does not perform research and development of its personalized recommendation systems in the Eastern District of Texas and is not aware of any work on prior art systems (including The Echo Nest) performed in this District. Lacker ¶¶ 25, 27. Nor do Spotify USA or Spotify AB own, operate, or control any property or physical place in the Eastern District of Texas. Goring ¶¶ 10–11; Glimberg ¶¶ 13–14. *See Network Protection Sciences*, 2012 WL 194382, at *7 (factor favored transfer when defendants were headquartered and employed numerous key witnesses in transferee district and allegedly infringing products were researched and developed there); *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*, No. 2:10-cv-160-JRG, 2012 WL 194370, at *6–7 (E.D. Tex. Jan. 23, 2012) (factor favored transfer when "Defendants [sic] substantial business activities regarding marketing and sale of the accused" product took place in the transferee district and "no company involved in this matter, including

Plaintiff, has an office in the Eastern District of Texas").

**b. Administrative difficulties flowing from court congestion**

This factor is neutral. The Southern District of New York has a shorter median time from filing to disposition in civil cases, though the Eastern District of Texas has a shorter median time from filing to civil trial. McKeever Ex. 53 at 11, 35. Also, the judge-normalized civil workload in the Southern District of New York is lower than the workload in the Eastern District of Texas:

| **Metric** | **E.D. Tex.** | **S.D.N.Y.** |
|---|---|---|
| Total Filings per Judgeship | 659 | 455 |
| Civil Filings per Judgeship | 553 | 399 |
| Pending Cases per Judgeship | 862 | 612 |
| Weighted Filings per Judgeship | 916 | 490 |

*Id.* Therefore, this factor is at least neutral. *See Astute Tech., LLC v. Association Archives, Inc.*, No. 2:15-cv-1511-JRG, D.I. 35, at *6 (E.D. Tex. Apr. 20, 2016) (granting transfer based in part on federal case management statistics).

**c. Other public interest factors**

The familiarity with governing law factor and avoidance of conflicts of laws is neutral because federal patent law will govern this dispute regardless of whether it is tried in this District or the Southern District of New York.

* * *

Because the *Volkswagen* factors strongly favor transfer, Plaintiff's claims against Spotify USA and Spotify AB should be transferred to the Southern District of New York even if venue in this Court were proper. *See In re Google LLC*, 58 F.4th at 1383-84; *Jawbone Innovations*, 2022 WL 23025538, at *5-6; *Network Protection Sciences*, 2012 WL 194382, at *6-7.

### C. Plaintiff's Claims Against Spotify Technology Should Be Dismissed or Severed and Stayed

Plaintiff's claims against Spotify Technology should be dismissed based on improper venue. *See supra* Section IV.A (venue improper as to Spotify USA). But if they are not dismissed based on improper venue, then Plaintiff's claims against Spotify Technology should be dismissed based on lack of personal jurisdiction or failure to state a claim or, alternatively, severed and stayed pending resolution of Plaintiff's claims against Spotify USA and Spotify AB.

#### 1. The Court lacks personal jurisdiction over Spotify Technology

The Court does not have personal jurisdiction over Spotify Technology. Plaintiff bears the burden of establishing that personal jurisdiction is proper. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).[7] As demonstrated below, Plaintiff has not and cannot establish that the Court has jurisdiction over Spotify Technology.

##### a. General jurisdiction

Plaintiff has not alleged and cannot establish that the Court has general jurisdiction over Spotify Technology. A court can exercise general jurisdiction over a defendant only where it is "at home," *i.e.*, where it is incorporated or maintains its principal place of business, or in the "exceptional case" where its "operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in the State." *Daimler AG*, 571 U.S. at 137-39, nn.19-20.

[7] In resolving jurisdictional motions, uncontroverted facts are to be taken as true and conflicts in evidence are resolved in favor of the plaintiff. *Lahman v. Nationwide Provider Sols.*, No. 4:17-cv-305, 2018 WL 3035916, at *11 (E.D. Tex. Jun. 19, 2018). When unsupported allegations are controverted by affidavit or declaration, the facts contained in the affidavit or declaration are to be taken as true. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

Here, Spotify Technology is not incorporated or headquartered in Texas; it is organized and has a registered office in Luxembourg. Glimberg ¶ 3. Nor is this an "exceptional case" in which Spotify Technology should be deemed to be at home in Texas. Spotify Technology is a non-operating holding company and exists solely as the parent of Spotify operating companies. *Id.* ¶¶ 4-5. *See Daimler AG*, 571 U.S. at 137-39, nn.19-20.

Plaintiff's conclusory allegation that Spotify Technology "purposefully direct[s] activities at the United States through [its] wholly-owned subsidiary Spotify USA Inc., which conducts business in Texas on [its] behalf" (D.I. 1 ¶ 16) falls far short of establishing jurisdiction. Plaintiff does not, and cannot, plead any facts that would justify imputing Spotify USA's acts in the United States to Spotify Technology. In fact, Spotify Technology does not direct or control the day-to-day operations of Spotify USA, Spotify USA does not have the authority to bind Spotify Technology, and the two entities maintain separate corporate records and finances. Goring ¶¶ 4-6. *See, e.g.*, *Fellowship Filtering Techs., LLC v. Alibaba.com, Inc.*, No. 2:15-cv-2049-JRG, 2016 WL 6917272, at *4, n. 2 (E.D. Tex. Sept. 1, 2016) (declining to impute in-forum contacts from a group of Alibaba entities to Alibaba.com, Inc., because "[t]here [was] no evidence of an attempt by Alibaba.com, Inc., to purposefully direct or control the activities" in Texas); *Wapp Tech Ltd. Partnership v. Micro Focus Int'l, PLC,* 406 F. Supp. 3d 585, 595 (E.D. Tex. 2019) ("typical corporate relationship between a parent and subsidiary . . . is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory").

**b. Specific jurisdiction**

Plaintiff cannot establish that the Court has specific jurisdiction over Spotify Technology. A court can exercise specific jurisdiction if the court has jurisdiction pursuant to the state's long-arm statute, and the exercise of jurisdiction comports with due process. *See Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1343-44 (Fed. Cir. 2006). "Because the Texas

long-arm statute extends to the limits of due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). Plaintiff must prove that defendant purposefully directed activities at the forum and that the claim relates to those activities ("minimum contacts") and, if shown, the burden shifts to defendant to establish that the exercise of jurisdiction would be unreasonable. *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016); *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

Plaintiff has not alleged, and cannot show, any Spotify Technology acts giving rise to its claims that were within, or purposefully directed to, Texas. Plaintiff also has not and cannot establish that Spotify USA's acts should be imputed to Spotify Technology. In fact, Spotify Technology is a non-operating two-employee company, exists solely as a holding company of Spotify operating companies, is not responsible for running the Spotify Service, is not registered to do business in the United States, and does not have any presence in Texas. Glimberg ¶¶ 3–9. *See Wapp Tech*, 406 F. Supp. 3d at 592–95 (dismissing foreign parent for lack of jurisdiction because plaintiff failed to show that subsidiaries were alter egos). Even if Plaintiff had shown "minimum contacts" (it has not), the exercise of jurisdiction would be unreasonable because Spotify Technology has no relevant witnesses, documents, or operations in Texas. Glimberg ¶¶ 6-8. *See Intercarrier Commc'ns LLC v. WhatsApp Inc.*, No. 3:12-cv-776, 2013 WL 5230631, at *5 (E.D. Va. Sept. 13, 2013) (exercise of personal jurisdiction over defendant "would be unreasonable" where defendant had no witnesses, evidence, or operations in the District).[8]

---

[8] Plaintiff can also obtain complete relief without Spotify Technology. *See Wapp Tech*, 406 F. Supp. 3d at 600 (dismissing foreign parent but allowing plaintiff's patent claims to proceed by amending against the parent's subsidiaries).

**c. Rule 4(k)(2) jurisdiction**

Plaintiff cannot establish jurisdiction over Spotify Technology under Federal Rule 4(k)(2). A court can exercise specific jurisdiction under Federal Rule 4(k)(2) if (1) plaintiff's claims arise under federal law; (2) plaintiff serves summons or files a waiver of service; (3) defendant is not subject to the general jurisdiction of any other state; and (4) the exercise of jurisdiction is consistent with the Constitution and laws of the United States. *DISH Network, L.L.C. v. Elahmad*, No. 23-20180, 2024 WL 1008585, at *2 (5th Cir. Mar. 8, 2024).

As explained above, Spotify Technology does not have any operations or contacts with the United States sufficient to give rise to jurisdiction under Rule 4(k)(2). *See Bella Forrest Publ'g LLC v. Murphy*, No. 4:24-cv-982, 2025 WL 3203669, at *4-5 (E.D. Tex. Nov. 17, 2025) (no Rule 4(k)(2) jurisdiction because affiliate's acts could not be imputed to defendant and defendant did not have sufficient contacts with the U.S.); *Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-cv-874, 2005 WL 1268061, at *1, 5-7 (D. Del. May 27, 2005) (no Rule 4(k)(2) jurisdiction where parent did not make, sell, or import products into the U.S. and had no U.S. offices or employees).

**2. Plaintiff fails to state a claim against Spotify Technology**

Even if the Court could exercise jurisdiction over Spotify Technology (it cannot), Plaintiff fails to plead specific facts sufficient to give rise to a claim against it. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff cannot assert a plausible claim for infringement . . . by reciting the [patent] claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

Here, Plaintiff does not allege that Spotify Technology itself participates in a single infringing act. Rather, Plaintiff generally alleges that Spotify Technology operates through its indirectly wholly-owned subsidiary Spotify USA and attempts to confuse the issue by attributing various alleged acts to an unspecified "Spotify." D.I. 1 ¶ 16. Accordingly, Plaintiff fails to state a claim against Spotify Technology. *See, e.g.*, *Longhorn Automotive Grp. LLC v. Nissan Motor Co.*, No. 2:24-cv-554-JRG, 2025 WL 2778563, at *2 (E.D. Tex. Sept. 26, 2025) (dismissing foreign defendant where "[n]one of the text, screenshots, or links in the Complaint allow the Court to draw a reasonable inference this defendant . . . practices the Asserted Patents within the United States"); *NorthStar Systems LLC v. Volkswagen AG*, No. 2:22-cv-486-JRG, D.I. 66, at 4-6 (E.D. Tex. Aug. 30, 2023) (dismissing foreign defendant where plaintiff alleged that defendant acted "directly or through intermediaries" without explaining how it infringed in the United States).

#### 3. Plaintiff's claims against Spotify Technology should be severed and stayed

If the Court does not dismiss Plaintiff's claims against Spotify Technology, then they should be severed and stayed. The court has broad discretion to sever and stay actions. *Network Sys. Techs., LLC v. Samsung Elecs. Co.*, No. 2:22-cv-481-JRG, 2023 WL 7649372, at *2 (E.D. Tex. Nov. 14, 2023). Severance is permitted when (1) the remaining claims are peripheral to the severed claims; (2) adjudication of the severed claims would potentially dispose of the remaining claims; and (3) the § 1404(a) factors warrant transfer of the severed claims. *Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010). In deciding whether to stay, the court considers "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set."

*Network Sys. Techs.*, 2023 WL 7649372, at *8.

Spotify Technology is a holding company that is not involved in researching and developing the personalized recommendation systems or operating the Spotify Service in the United States, or anywhere else. Glimberg ¶¶ 4-6. Accordingly, Plaintiff's claims against Spotify Technology, if not dismissed, are at best peripheral. And the adjudication of Plaintiff's claims against Spotify USA and Spotify AB would dispose of any claims against Spotify Technology. Plaintiff's claims against Spotify USA cannot move forward in this District and, even if they could, the relevant factors overwhelmingly favor transfer to New York.

The claims against Spotify Technology should also be stayed. Plaintiff would suffer no prejudice if its claims against Spotify USA and Spotify AB move forward in New York. Resolution of Plaintiff's claims against Spotify USA and Spotify AB will not only simplify the issues but also fully resolve any alleged claims against Spotify Technology. Moreover, this case is at its inception. Defendants have not answered Plaintiff's Complaint, no schedule has been set, and no trial date has been set.

Accordingly, Plaintiff's claims against Spotify Technology should be severed and stayed. *See Salazar v. HTC Corp.*, No. 2:16-cv-1096, 2017 WL 3593789, at *2-3 (E.D. Tex. Aug. 20, 2017) (severing and staying claims against "a holding company that does not sell the accused products" and noting that the lack of "specific factual allegations" against the holding company supported that the claims against it were "merely peripheral"); *Shifferaw*, 2010 WL 1064380, at *3 (severing and staying claims and explaining that, if the primary defendant were found liable and plaintiff collected damages from it, plaintiff could not also collect damages from the peripheral defendants because plaintiff "cannot receive a double recovery for the same sales").

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's claims against Defendants because venue is improper as to Spotify USA. In the alternative, the Court should transfer Plaintiff's claims against Spotify USA and Spotify AB to New York because the *Volkswagen* factors overwhelmingly favor transfer. And if Plaintiff's claims against Spotify Technology are not dismissed based on improper venue, then the Court should dismiss Plaintiff's claims against Spotify Technology based on lack of personal jurisdiction or failure to state a claim or, alternatively, sever and stay those claims.

Dated: July 16, 2026

By: /s/ J. Travis Underwood

J. Travis Underwood
Texas Bar No. 2102587
GILLAM & SMITH, LLP
303 South Washington Avenue
Tyler, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: travis@gillamsmithlaw.com

Kyle W. Mooney
(*pro hac vice forthcoming*)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Email: kmooney@mofo.com

Brian C. Nash
Texas Bar No. 24051103
MORRISON & FOERSTER LLP
300 Colorado, Suite 1800
Austin, Texas 78701
Telephone: (737) 309-0700
Email: bnash@mofo.com

*Attorneys for Defendants Spotify USA Inc., Spotify AB, and Spotify Technology S.A.*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for the Spotify USA met and conferred with counsel for Plaintiff to discuss the substantive relief sought in this Motion in accordance with Local Rule CV-7(h). Counsel for Plaintiff indicated that Plaintiff is opposed to this Motion.

*/s/ J. Travis Underwood*
J. Travis Underwood

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF System. A true and correct copy of this document is also being served to all counsel of record via electronic mail.

*/s/ J. Travis Underwood*
J. Travis Underwood